EMPIRE SOUTHERN GAS COMPANY, a corporation organized and existing under the laws of the State of Delaware,

*vs.*

HAROLD G. GRAY and JAMES A. DAVIS.

*New Castle, April 4, 1946.*

96

*Edwin D. Steel, Jr.,* and *Hugh M. Morris,* of the firm of Morris, Steel, Rodney, Nichols & Arsht, for complainant.

*Stewart Lynch* (Lynch & Herrmann, of counsel), for respondents.

SEITZ, Vice-Chancellor. This is the decision on the complainant's motion for a preliminary injunction to prevent the respondents from soliciting proxies purportedly pursuant to authority given them by the board of directors of the complainant corporation, and from voting proxies so solicited at the annual meeting of the stockholders to be held on April 11, 1946. The bill of complaint, in substance, charges that the respondents have fraudulently led the stockholders to believe contrary to the fact that such solicitation is pursuant to authority given by the board of directors, and that by their acts respondents have procured the advantage not only of the use of the corporate name of complainant, but the unopposed solicitation of proxies well in advance of the meeting date. The bill prays, *inter alia,* for a preliminary injunction enjoining the respondents from soliciting proxies in the name of the complainant, or ostensibly pursuant to the authority of its board of directors and from soliciting any proxies unless they are readily distinguishable in appearance from those which accom-

panied the notice of annual meeting and proxy statement mailed by the complainant, and finally from voting for any purpose whatsoever any proxies of any kind, unless they are readily distinguishable in appearance from those which accompanied the notice of annual meeting and proxy statement mailed by the complainant.

The complainant, Empire Southern Gas Company, a Delaware corporation, filed its bill of complaint in this court on March 20, 1946, naming as respondents Harold G. Gray and James A. Davis, both nonresidents of this State. The complainant's application for a temporary restraining order was heard on March 22, prior to service of process upon or the entry of a general appearance for the respondents, but such general appearance was entered prior to the entry of the restraining order on March 23. In accordance with the usual practice, the restraining order also fixed a date for the hearing on the application for a preliminary injunction. This hearing, based entirely on voluminous affidavits filed by the parties, was held on March 30, at which time the court also heard the legal arguments of counsel. Thereafter, briefs in support of the respective contentions of the parties were filed with the court.

The issues to be decided can best be presented by setting forth what appear to the court to be the substantial contentions advanced by the respondents:

1. *Section* 31 of the *General Corporation Law of Delaware, Rev. Code* 1935, § 2063, provides an exclusive remedy to review any phase of a stockholders' election, and this court may not interfere under any circumstances prior to the election.

2. Assuming that this court may interfere in a proper case prior to a stockholders' election, the corporation is not a proper complainant in such a case.

3. Assuming this action may be maintained by the corporation, nevertheless, (a) the respondents in sending out

the notices, proxy statements and proxies acted pursuant to authority given them by the resolution of the board of directors dated February 21, 1946, or (b) the notices, proxy statements, and proxies sent out by the respondents, when fairly read, do not purport to have been sent out pursuant to authority given by the present board of directors.

4. In any event, the jurisdiction of this court being so doubtful, and the facts so much in dispute, a preliminary injunction should not be issued.

As is not unusual in litigation arising from an intra-corporate struggle, the issues have been somewhat obscured by the prolix and immaterial mutual recriminations and protestations of good faith. Also, I believe that the purpose of the litigation and its effect, if accomplished, will have none of the dire effects which the respondents would ascribe to it.

We turn now to the issues to be decided. Does the existence of *Section* 31 of our *General Corporation Law* preclude this court from interfering with a stockholders' election, or more accurately, the actions of those interested in such election at any time for any reason prior to such election? I believe both precedent and practice support the right of this court to interfere prior to a stockholders' meeting to prevent fraud in the solicitation of proxies, and to enjoin the voting of proxies so obtained. This conclusion is implicit in at least three cases involving Delaware corporations. See *Aldridge v. Franco-Wyoming Securities Corporation,* 26 *Del. Ch.* 213, (1942) 26 *A.* 2d 544; *Bouree, et al., v. Trust Francais, etc.,* (1924) 14 *Del. Ch.* 332, 127 *A.* 56; *Hand v. Missouri-Kansas Pipe Line Co.,* (D.C., 1944) 54 *Fed. Supp.* 649. It would, indeed, be stultifying for a court of equity to disclaim jurisdiction in all cases, no matter how flagrant the fraud, and relegate the parties to an action under *Section* 31 with the consequent economic waste. While courts are reluctant to interfere unduly prior to a stock-holders' election, such a reluctance is not to be considered

as equivalent to the complete absence of a remedy during such period.

I conclude, therefore, that *Section* 31 is not exclusive and that in a proper case this court may entertain an action to prevent fraud in the solicitation of proxies, and may enjoin such solicitation and the voting of proxies procured thereby.

Turning now to the second issue: Is the corporation a proper complainant to assert the injury alleged and to procure the relief requested, or, stated with relation to the facts here involved: May the complainant Delaware corporation maintain an action in this court seeking to enjoin the respondents from voting proxies which were procured by them after sending notices of meeting, proxy statements, and proxies purportedly pursuant to authority given by the incumbent board of directors when not in fact so authorized?

It will be assumed for the moment that the notices, proxy statements and proxies sent out by the respondents do appear to be sent pursuant to authority given by the board of directors, and it will be further assumed that no such authority existed in fact. Under this assumed state of facts, is there a remedy available in this court to the complainant corporation? Preliminarily, I have no doubt that a respondent who misrepresents the action of the board of directors is thereby misrepresenting the action of the corporation, because under *Section* 9 of the *General Corporation Law, Rev. Code* 1935, § 2041, the directors are authorized to manage the business of the corporation.

Respondents assert, in effect, that the complainant has no remedial interest in the action asserted, and that the corporation, *qua* corporation, has no proper place in a struggle for control between two rival factions of stockholders.

The respondents' assertions, it seems to me, misconceive the nature of this action and a more extreme example tends

to demonstrate the real issue as I see it. Let us take a corporation having a stockholder who has no connection with the corporation, except that he owns one share of its stock. This stockholder decides that he wants to solicit proxies without having decided for whom he will vote them; you might even go further and assume that he will vote them for the incumbents. He realizes, however, that his name will mean nothing to the average stockholder of the company, so in his proxy statement and proxy he makes it appear quite clearly, contrary to the fact, that he is soliciting such proxies pursuant to authority given him by the board of directors.

In this supposititious case, would the corporation be a proper complainant in an action to enjoin the stockholder from soliciting in the manner indicated and from voting proxies so solicited. I believe the answer must be in the affirmative. On what theory do I reach such a conclusion? First, I believe such a result is justified on the ground that a corporation, like any other entity is entitled to have the aid of the court in preventing persons from making continuous misrepresentations as to the authority given them by, or their connection with the corporation. The right of the corporation in this respect cannot be denied, it seems to me, merely because we are here dealing with a struggle for control of the corporation. The incumbent board of directors, so long as they maintain that status, are alone entitled to speak for or to authorize others to speak for the corporation.

This is simply an action to prevent and to undo misrepresentations made by the respondents. These misrepresentations consist of using documents which give the erroneous impression to the average reader that they are sent pursuant to authority given by those authorized by law to manage the business of the corporation, i.e., the board of directors. It may be argued that proxy solicitation is not the business of the corporation and, therefore, the incumbent

board has no right to use the power inherent ·in the use of the corporate name, but, as I have said, the right of the incumbents to speak for the corporation is inherent in our system of corporation law itself, and a logical corollary is their right to prevent others from purporting to speak therefor.

To say that the corporation has not been injured and that the injured stockholders should be the ones to complain is to wink at the realities of the situation. Moreover, for good or evil, the incumbent board of directors of a Delaware corporation may look to the corporation for payment of expenses incurred by them in soliciting proxies where a question of policy is involved. See *Hall v. Trans-Lux, etc. Corp.*, 20 *Del. Ch.* 78, 171 *A.* 226. This right would be rather empty, indeed, if a board involved in a policy disagreement with another group could not prevent such group from soliciting proxies presumably on behalf of the management, i.e., the board of directors, when they were advocating a policy diametrically opposed to that of the management.

The complainant makes the point that a question of policy is here involved, and that under the authority of *Hall v. Trans-Lux, supra,* the management has a duty to solicit proxies and a correlative right to prevent others from purporting to solicit proxies on behalf of the management. Obviously, if this correlative right did not exist, there could be no assurance that a clear question of policy would be presented to the stockholders.

While no question of policy was raised either in the proposed notice of meeting and proxy which were sent from Philadelphia to the Fort Worth office, but never mailed, nevertheless, some hint of a disagreement over policy is raised, at least by innuendo, in the proxy statements mailed by the defendants on March 12. The disagreement on questions of policy has now broken out into the open as a full fledged controversy, and although the parties disagree as to what is the nature of the issue involved, both are in

agreement that some such issue does exist. Complainant's brief urges that the issue of policy relates to the desirability of a proposed merger of the complainant corporation with the Southern Union Gas Company, while the respondents in their brief characterized this as a "red herring", and state that "It appears from the Davis affidavit expressly and from the Rea affidavit implicitly that the real question of policy is Woodcock's attitude in continually saddling corporate expense of maintaining a suite of offices in Wilmington on Empire Southern Gas Company."

Both the management as represented by the majority of the board of directors and the respondents have by statements sent to the stockholders, subsequent to the issuance of the restraining order herein, revealed that a policy disagreement such as I believe the *Trans-Lux* case contemplated is now before the stockholders (see affidavits of Hennaman and Davis).

Because of these subsequent events, which are but tangible evidence of the fact that the two groups are appealing to the stockholders on a question of corporate policy, it is my opinion that they constitute further evidence of the desirability of and justification for the conclusion that the corporation is a proper complainant in this action.

It is my conclusion under this point that the corporation is a proper complainant in an action seeking to enjoin persons from soliciting proxies, and thereafter from voting them when such solicitations are purportedly made pursuant to the authority of the board of directors contrary to the fact. Whatever benefit may redound to the incumbent board of directors because of the right given them, speaking through the corporation, to exclude others from purporting to speak for the board, is inherent in the democratic process which governs our corporation law, as well as long accepted corporate practice.

Having concluded that this corporate complainant may

maintain the present action, it is now necessary to consider the respondents' contentions that the notices of meeting, the proxy statements and the proxies sent out by the respondents on or about March 12, 1946, when fairly read, do not purport to have been sent out pursuant to authority given by the board of directors or, in the alternative, such material was sent pursuant to the authority given by the directors' resolution of February 21, as interpreted by past practice. These contentions, passing over their inherent inconsistency, require a consideration of certain facts set forth in the bill and the affidavits.

The resolution adopted by the board of directors on February 21, 1946, reads thus:

" 'Resolved, that the officers of the Corporation be and hereby are authorized to issue notice of the annual meeting of stockholders to be held on April 11, 1946 to all stockholders of record as of the close of business on March 4, 1946, said notice to be accompanied by a form of proxy for use by stockholders who do not attend the meeting.' "

What was the nature of the notices of meeting, proxy statements, and proxies sent out by the defendants to all the stockholders under date of March 12, 1946?

The following facts are undisputed: The "Notice of Annual Meeting of Stockholders To Be Held April 11, 1946" is on the letterhead of Empire Southern Gas Company, is signed by Harold G. Gray, Secretary, and the last two paragraphs read as follows:

"Stockholders who do not expect to attend in person, but wish their stock to be voted on the matters to be transacted at the meeting, are requested to execute and return the enclosed proxy to which no postage need be affixed if mailed in the United States.

"By order of the Board of Directors."

The "Proxy Statement" is physically attached to the notice of meeting, and is signed by James A. Davis as president. The first paragraph of the proxy statement reads:

"* * * The expenses of this solicitation, which are estimated at $250 (the cost of printing, addressing and postage) will be paid by the Company. * * *"

The second paragraph commences "As stated in the Notice", etc.

The third paragraph reads as follows:

"Proposed directors: it is proposed that Jas. A. Davis, Dave Duncan, Fred M. Mayer, Robert T. Piner, Robert W. Rea, Dan W. Stewart, Jr., and G. R. White be elected directors of the Company to serve until the next annual meeting of stockholders or until their successors shall have been duly elected and shall qualify."

Then there appears a short statement concerning each of the directors proposed, but in no case is it stated as to the three new directors proposed that they are not presently directors, or that they are being proposed for the first time as directors. The fact that they are presently acting as directors is stated, however, as to the four incumbents which the respondents would have retained.

Accompanying the notice and proxy statement was a proxy in which James A. Davis and Harold G. Gray are named. On the reverse side is printed the following:

"2c—Postage Will Be Paid By—
"Empire Southern Gas Company
"P. O. Box 230
"Fort Worth 1, Texas"

Would a stockholder reading the notice, the proxy statement and the proxy be likely to obtain the impression that the proxy was being solicited by authority of the board of directors of the complainant company? I believe that he would so conclude, unless it is to be implied that the law will assume all stockholders will read and examine the various documents through the eyes of one who is placed on guard as to the possible existence of misleading statements. To expect or to require such a procedure of stockholders would remove the law beyond reason or reality. The accepted and desirable tendency has been to place the burden of

candor upon those who would communicate with stockholders rather than to require the stockholders to be eternally vigilant. See *Jackson and Others v. The Munster Bank (Ltd.), Shaw and Others, L. R.* 13 *Ir.* 118 (1884).

Having concluded that the notices, proxy statements and proxies sent out by the respondents, when fairly read, purport to have been sent pursuant to authority given by the board of directors, the question now recurs: Were the respondents authorized to send out such material pursuant to the authority of the board of directors by virtue of the resolution of February 21, 1946, or if it be material, did they in good faith believe that they were authorized to do as they did?

Respondents would urge that merely because the proxy statement is a physical part of the notice of meeting, the court should not read them together. However, this contention is hard to understand, if respondents would rely on the resolution of February 21, 1946. Moreover, there is no reason to consider them separately, if the respondents were acting pursuant to the February 21, 1946, resolution of the board—but they were not so acting as certain indisputable facts reveal.

The tenor of both the Gray and the Davis affidavit is to the effect that the other directors never told them they desired that the incumbents be nominated for re-election, and that the respondents were under no duty to advise all the directors as to what they intended to do. I am in accord with the complainant's statement that:

"The gist of the argument advanced by Defendants is that since the resolution of February 21, 1946 conferred upon the 'officers of the Corporation' authority to issue notice of annual meeting to be accompanied by a form of proxy, the officers were free to name anyone in the proxies that they pleased, and that the proxies so named were at liberty to recommend to the stockholders and to vote for any persons whom the officers might determine upon. The argument carried to its logical conclusion, would support the view that Davis and Gray understood that the incumbent Board of Di-

rectors had vested them with the power to solicit proxies to turn out of office everyone of the present directors of the Corporation. * * *"

Such a possible conclusion must be rejected both in principle and on the facts before the court. While the parties are not in entire accord as to the past practice of the corporation with respect to the preparation and sending of the notices of meeting and proxies, it is clear that at all times since the stock became publicly owned in 1943 the incumbent directors have been renominated. It is unnecessary, however, to go back to the custom of previous years, because certain undisputed events which occurred this year demonstrate that the respondents knew that they were not acting pursuant to the February 21 resolution of the board.

Thus, on March 7 the chairman of the board caused a teletype message to be sent to Fort Worth from Wilmington to the respondent Gray as secretary of the company, reading in part as follows:

" 'Proxies And Notice Of Annual Meeting Will Be Air Expressed U Shortly. Have Proxies Addressed And a Proxy And Notice Of Annual Meeting Should be Mailed Each Stockholder on March 15.' "

Gray advised the teletype operator at Fort Worth to reply "Will Deliver Message", and caused the message to be filed. It is clear, however, from the Davis affidavit that he also was aware of the receipt of the teletype. Meanwhile, on March 4, the respondent Davis had advised the respondent Gray to complete and mail notices, proxy statements and proxies to all the stockholders of the corporation. These proxy forms named the respondents as proxies, and the proxy statement named seven persons for whom the proxies would be voted. These names did not include three of the incumbent directors. Hence, this struggle. They were not mailed, however, until March 12—well after the date of the receipt of the teletype message. All this was done without notice to the board of directors and unbeknown to the majority of the board.

If any doubt remains as to whether the respondents felt they were proceeding, to say the least, not in accordance with the known wishes of the board of directors as such, it is removed by the affidavit of Harvey C. Day, now secretary and treasurer of the complainant corporation. Attached to the Day affidavit is a true and exact copy of a file copy of a letter sent out under date of March 11. It appears that the letter was signed by the respondent Davis, and was addressed to three individuals, and it also appears that a copy was sent to the respondent Gray. It reads in part as follows:

"In view of the developing stock fight and the efforts we are making to gain control of this company, I find I will be thoroughly tied up for the next five or six weeks and will not have much time to devote to actual operations. * * *

"This will free me of the travel requirements and will permit me to devote almost all of my time to the matter in hand. * * *"

The existence and authenticity of this document stand unassailed. Moreover, the respondent Davis recites in his own affidavit that on March 1, he contacted the director Rea soliciting his support for an independent Board of Directors. It seems clear that the respondents knew they were acting contrary to the wishes of the board of directors.

Respondents seek to make something of the fact that the teletype was signed by one not an employee of the company and that the offices of the company in Wilmington had been closed. Certain unchallenged evidence, notably that contained in the affidavits of Harvey C. Day and Harvey P. Rainier, indicates that the respondents were well aware of the source of the teletype and the fact that, at least for limited purposes, the corporation continued to have a Wilmington office.

Moreover, when on March 13, two of the directors learned for the first time what the respondents had done, they caused a meeting of the board of directors to be called for March 19. At this meeting, the majority of the board, by

resolution, confirmed the fact that they had not authorized the respondents to send out proxy statements and proxies of the type which were sent out, and that the respondents in so doing were acting in defiance of the wishes of the board. The resolution also authorized the institution of appropriate legal proceedings to remedy the situation. While the resolution was passed by a vote of four to three, nevertheless, I cannot, as respondents would have me do, ignore the fact that it is the resolution of the board of directors.

The respondents, Davis and Gray, rely on the fact that as president and secretary of the company, respectively, they did exactly as they were authorized to do by the resolution of February 21, and in any event, the notices of meeting and proxies which were mailed from Philadelphia on March 12 were properly ignored and destroyed because the recital as to the time of meeting contained therein was not in conformity with the by-laws. They further assert that they owed no duty to inquire as to what any of the board desired with respect to the personnel to be nominated for directors of the corporation for the ensuing year.

It seems to me that these arguments of the respondents contain a twofold vice. First, they miss the real issue which is the right of anyone to purport to speak by authority of the board of directors, when they do not do so in fact. Second, the respondents treat the question of their failure to advise the majority of the directors of their intention as though it involved a legal principle, but it seems to me this failure is, along with other facts, to be treated merely as evidence of the respondents' understanding of the resolution of February 21, and their good faith in mailing the material on March 12.

The struggle for control of the corporation now going on between the two groups who are presently represented on the board must not obscure the real principle that the actions of the board of directors, speaking through the majority of its

members, must be recognized no matter which particular faction may be in control.

The complainant does not seek in anywise to hinder the respondents from soliciting proxies by legitimate means. All the complainant seeks is to prevent the respondents from soliciting and thereafter voting proxies procured through a material misrepresentation of fact, namely, that the respondents speak on behalf of the board pursuant to authority given them by the board of directors. In my opinion, the board of directors, speaking through the complainant corporation, is entitled to the relief requested.

Respondents also seek to justify their actions on the ground that, in their opinion, the directors they seek to oust, are not managing the corporation in the best interests of the stockholders. In this instance at least, the end cannot be said to justify the means employed by the respondents and further, even if it be assumed that the respondents were acting in the best interests of the corporation, it still should not and does not preclude the corporation from obtaining the relief here sought, because the actions of the respondents were unauthorized and misleading. See, generally, *Townsley v. Bankers' Life Insurance Co. of the City of New York*, (1900) 56 *App. Div.* 232, 67 *N.Y.S.* 664.

The right to speak for the board of directors, *qua* board, may be given or withheld by those in control of the board as they see fit, and if one purports to speak on its behalf without authority, the board acting through the corporate entity should be able to and can prevent it, whether it be in a proxy contest or otherwise. I am not called upon to decide whether the accepted practice of management in soliciting proxies under the corporate name is legal because that is not the issue here. This erroneous assumption that such is the issue permeates all of the respondents' arguments.

I come now to the respondents' final contention that because the jurisdiction of this court is so doubtful, and

because the facts are so much in dispute, a preliminary injunction should not be issued. First, I entertain no doubt as to the jurisdiction of this court in a proper case to enjoin the fraudulent solicitation of proxies and to enjoin the voting of proxies so obtained. Second, while the question of the right of the corporate complainant to maintain an action of this type is apparently novel—at least in the limited time available, I have found no such case, nor have counsel cited such a case—I do not feel that for this reason alone I should refuse the preliminary injunction, see *Dodge v. Cole, et al.*, (1881) 97 *Ill.* 338, 37 *Am. Rep.* 111; 1 *Pomeroy Equity Jurisprudence*, (*5th Ed.*) § 60, particularly when the point was considered on the application for a restraining order, and when the applicable principle of law to be decided at the final hearing will be the same, and in all probability cannot be altered by any additional facts which may be presented at that time.

Finally, the facts which I deem material to this decision and on which I have relied are not in dispute, and because such facts are largely documentary, there is little possibility that the evidence which could be introduced at the final hearing would materially alter the facts pertinent to the issues here decided.

Other contentions made by the parties have been considered and have either been reconciled with the result here reached, or have been considered immaterial in determining the questions presented.

I conclude, therefore, that the complainant has shown at least a reasonable probability of ultimate success upon a final hearing and for this reason the prayer for a preliminary injunction should be granted.

The problem of drafting this injunction so as not to disfranchise any stockholder requires some consideration. See *Securities and Exchange Commission v. O'Hara*, (*D.C.*, 1939) 28 *F. Supp.* 523. After the issuance of the restraining

order by this court, the complainant on March 24, sent out to stockholders a letter, proxy and option agreement, which it can be assumed constitutes adequate solicitation of proxies on behalf of what I may call the "management group" (see affidavit of Frank F. Hennaman). The respondents on March 26 sent out to all stockholders a letter and proxy, which it can be assumed is adequate solicitation on behalf of the respondents. However, since the stockholders' meeting is scheduled to be held on April 11, and since the stockholders, while not in great number, are widely dispersed,and because the respondents alone may be adversely affected by the issuance of this preliminary injunction, I will hear any application the respondents may wish to make with respect to the desirability of a postponement of the stockholders' meeting for a reasonable time, based upon the possibility that some stockholders may otherwise be disfranchised. The application, if any, to be made by the respondents, shall be made in my Chambers on April 5, 1946, at 11:00 A. M., otherwise the preliminary injunction will issue on the assumption that the stockholders' meeting will be held on April 11 as scheduled.

An order accordingly will be advised.