134 A.2d 852 (1957)
Ralph B. CAMPBELL, Plaintiff,
v.
LOEW'S, INCORPORATED, a Delaware corporation, Joseph R. Vogel, William A. Parker, George L. Killion and John L. Sullivan, Defendants.
Court of Chancery of Delaware, New Castle.
September 19, 1957.
*854 Henry M. Canby of Richards, Layton & Finger and Arthur G. Logan and Aubrey B. Lank of Logan, Marvel, Boggs & Theisen, Wilmington, and Milton S. Pollack, New York City, for plaintiff.
David F. Anderson of Berl, Potter & Anderson, Wilmington, and Louis Nizer of Phillips, Nizer, Benjamin & Krim, New York City, and Benjamin Melniker, New York City, for corporate defendant.
The individual defendants have not yet appeared.
SEITZ, Chancellor.
This is the decision on plaintiff's request for a preliminary injunction to restrain the holding of a stockholders' meeting or alternatively to prevent the meeting from considering certain matters or to prevent the voting of certain proxies. Certain other relief is also requested.
The corporate defendant appeared and resisted the motion.[1] The four individual defendants, who are directors, were given until September 23, to appear and as of this date (September 19, 1957) have not appeared. Consequently, reference to "defendant" will embrace only the corporation unless otherwise indicated.
*855 Some background is in order if the many difficult and novel issues are to be understood. Two factions have been fighting for control of Loew's. One faction is headed by Joseph Tomlinson (hereafter "Tomlinson faction") while the other is headed by the President of Loew's, Joseph Vogel (hereafter "Vogel faction"). At the annual meeting of stockholders last February a compromise was reached by which each nominated six directors and they in turn nominated a thirteenth or neutral director. But the battle had only begun. Passing by much of the controversy, we come to the July 17-18 period of this year when two of the six Vogel directors and the thirteenth or neutral director resigned. A quorum is seven.
On the 19th of July the Tomlinson faction asked that a directors' meeting be called for July 30 to consider, inter alia, the problem of filling director vacancies. On the eve of this meeting one of the Tomlinson directors resigned. This left five Tomlinson directors and four Vogel directors in office. Only the five Tomlinson directors attended the July 30 meeting. They purported to fill two of the director vacancies and to take other action. This Court has now ruled that for want of a quorum the two directors were not validly elected and the subsequent action taken at that meeting was invalid. See Tomlinson v. Loew's, Inc., Del.Ch., 134 A.2d 518.
On July 29, the day before the noticed directors' meeting, Vogel, as president, sent out a notice calling a stockholders' meeting for September 12 for the following purposes:
1. to fill director vacancies.
2. to amend the by-laws to increase the number of the board from 13 to 19; to increase the quorum from 7 to 10 and to elect six additional directors.
3. to remove Stanley Meyer and Joseph Tomlinson as directors and to fill such vacancies.
Still later, another notice for a September 12 stockholders' meeting as well as a proxy statement went out over the signature of Joseph R. Vogel, as president. It was accompanied by a letter from Mr. Vogel dated August 9, 1957, soliciting stockholder support for the matters noticed in the call of the meeting, and particularly seeking to fill the vacancies and newly created directorships with "his" nominees. Promptly thereafter, plaintiff began this action. An order was entered requiring that the stockholders' meeting be adjourned until October 15, to give the Court more time to decide the serious and novel issues raised. See Campbell v. Loew's, Inc., Del.Ch., 134 A.2d 565.
I believe it is appropriate first to consider those contentions made by plaintiff which concern the legality of the call of the stockholders' meeting for the purposes stated.
Plaintiff contends that the president had no authority in fact to call a special meeting of stockholders to act upon policy matters which have not been defined by the board of directors. Defendant says that the by-laws specifically authorize the action taken.
It is helpful to have in mind the pertinent by-law provisions:
Section 7 of Article I provides:
"Special meetings of the stockholders for any purpose or purposes, other than those regulated by statute, may be called by the President * * *"
Section 2 of Article IV reads:
"The President * * * shall have power to call special meetings of the stockholders * * * for any purpose or purposes * * *"
It is true that Section 8(11) of Article II also provides that the board of directors may call a special meeting of stockholders for any purpose. But, in view of the explicit language of the by-laws above quoted, can this Court say that the president was without authority to call this meeting *856 for the purposes stated? I think not. I agree that the purposes for which the president called the meeting were not in furtherance of the routine business of the corporation. Nevertheless, I think the stockholders, by permitting the quoted by-laws to stand, have given the president the power to state these broad purposes in his call. Moreover, it may be noted that at least one other by-law (Article V, § 2) makes certain action of the president subject to board approval. The absence of such language in connection with the call provision, while not conclusive, is some evidence that it was intended that the call provision should not be so circumscribed.
The plaintiff argues that if this by-law purports to give the president the power to call special stockholders' meetings for the purposes here stated, then it is contrary to 8 Del.C. § 141(a), which provides:
"The business of every corporation organized under the provisions of this chapter shall be managed by a board of directors, except as hereinafter or in its certificate of incorporation otherwise provided."
I do not believe the call of a stockholders' meeting for the purposes mentioned is action of the character which would impinge upon the power given the directors by the statute. I say this because I believe a by-law giving the president the power to submit matters for stockholder action presumably only embraces matters which are appropriate for stockholder action. So construed the by-laws do not impinge upon the statutory right and duty of the board to manage the business of the corporation. Plaintiff does not suggest that the matters noticed are inappropriate for stockholder consideration. And, of course, the Court is not concerned with the wisdom of the grant of such power to the president.
Plaintiff's next argument is that the president has no authority, without board approval, to propose an amendment of the by-laws to enlarge the board of directors. Admittedly this would be a most radical change in this corporate management. Indeed, it may well involve the determination of control. However, as I have already indicated, I believe the wording of the by-laws authorizes such action.
Plaintiff next argues that the president had no power to call a stockholders' meeting to fill vacancies on the board. As I understand plaintiff's argument it is that the existence of Article V, § 2 of the by-laws, which provides that the stockholders or the remaining directors may fill vacancies, by implication, precludes the president from calling a stockholders' meeting for that purpose; that provision being intended for stockholder use only at the initiative of the stockholders. First of all, the by-laws permit the president to call a meeting for any purpose. This is broad and all-embracing language and I think it must include the power to call a meeting to fill vacancies. The fact that the stockholders may on their initiative have the right to call a meeting for that purpose does not seem to be a sufficient reason for implying that the president is thereby deprived of such power.
Plaintiff points to the "extraordinary state of affairs" which the recognition of such power in the president would create. Obviously it gives the president power which may place him in conflict with the members of the board. But such consequences inhere in a situation where those adopting the by-laws grant such broad and concurrent power to the board and to the president. The validity but not the wisdom of the grant of power is before the Court. I conclude that under the by-laws the president has the power to call a meeting to fill vacancies on the board.
Plaintiff next argues that the president's action in calling a stockholders' meeting to fill vacancies was unlawful because it was in conflict with the previously scheduled action by the board on the same subject. It should be noted that the proxy statement *857 sent out by the president states that the stockholders would only fill the two vacancies purportedly filled by the board, if their election by the board was held to be invalid. To this extent then the call was not in conflict with this aspect of the board's action. But in any event I have now ruled that the board did not legally fill the vacancies and so the matter would seem to be moot. Moreover, the record is so cloudy as to some of the facts involved on this point that it would not warrant the granting of relief at this time.
The next point made in plaintiff's brief is that the president had no power to fix the record date for voting purposes. However, it turned out that the executive committee fixed the record date and plaintiff's counsel, although given the opportunity at oral argument, did not attack the action of the executive committee. I assume that plaintiff has in effect abandoned this contention.
I therefore conclude that the president had the power to call the meeting for the purposes noticed. I need not consider the effect of the fact that the executive committee recommended that a special stockholders' meeting be called.
Plaintiff next argues that the stockholders have no power between annual meetings to elect directors to fill newly created directorships.
Plaintiff argues in effect that since the Loew's by-laws provide that the stockholders may fill "vacancies", and since our Courts have construed "vacancy" not to embrace "newly created directorships" (Automatic Steel Products v. Johnston, 31 Del. Ch. 469, 64 A.2d 416, 6 A.L.R.2d 170), the attempted call by the president for the purpose of filling newly created directorships was invalid.
Conceding that "vacancy" as used in the by-laws does not embrace "newly created directorships", that does not resolve this problem. I say this because in Moon v. Moon Motor Car Co., 17 Del.Ch. 176, 151 A. 298, it was held that the stockholders had the inherent right between annual meetings to fill newly created directorships. See also Automatic Steel Products v. Johnston, above. There is no basis to distinguish the Moon case unless it be because the statute has since been amended to provide that not only vacancies but newly created directorships "may be filled by a majority of the directors then in office * * * unless it is otherwise provided in the certificate of incorporation or the by-laws * * *". 8 Del.C. § 223. Obviously, the amendment to include new directors is not worded so as to make the statute exclusive. It does not prevent the stockholders from filling the new directorships.
Is there any reason to consider the absence of a reference in the by-laws to new directorships to be significant? I think not. The by-law relied upon by plaintiff was adopted long before the statutory amendment and it does not purport to be exclusive in its operation. It would take a strong by-law language to warrant the conclusion that those adopting the by-laws intended to prohibit the stockholders from filling new directorships between annual meetings. No such strong language appears here and I do not think the implication is warranted in view of the subject matter.
I therefore conclude that the stockholders of Loew's do have the right between annual meetings to elect directors to fill newly created directorships.
Plaintiff next argues that the shareholders of a Delaware corporation have no power to remove directors from office even for cause and thus the call for that purpose is invalid. The defendant naturally takes a contrary position.
While there are some cases suggesting the contrary, I believe that the stockholders have the power to remove a director for cause. See Auer v. Dressel, 306 N.Y. 427, 118 N.E.2d 590, 48 A.L.R.2d 604; *858 compare Bruch v. National Guarantee Credit Corp., 13 Del.Ch. 180, 116 A. 738. This power must be implied when we consider that otherwise a director who is guilty of the worst sort of violation of his duty could nevertheless remain on the board. It is hardly to be believed that a director who is disclosing the corporation's trade secrets to a competitor would be immune from removal by the stockholders. Other examples, such as embezzlement of corporate funds, etc., come readily to mind.
But plaintiff correctly states that there is no provision in our statutory law providing for the removal of directors by stockholder action. In contrast he calls attention to § 142 of 8 Del.C., dealing with officers, which specifically refers to the possibility of a vacancy in an office by removal. He also notes that the Loew's by-laws provide for the removal of officers and employees but not directors. From these facts he argues that it was intended that directors not be removed even for cause. I believe the statute and by-law are of course some evidence to support plaintiff's contention. But when we seek to exclude the existence of a power by implication, I think it is pertinent to consider whether the absence of the power can be said to subject the corporation to the possibility of real damage. I say this because we seek intention and such a factor would be relevant to that issue. Considering the damage a director might be able to inflict upon his corporation, I believe the doubt must be resolved by construing the statutes and by-laws as leaving untouched the question of director removal for cause. This being so, the Court is free to conclude on reason that the stockholders have such inherent power.
I therefore conclude that as a matter of Delaware corporation law the stockholders do have the power to remove directors for cause. I need not and do not decide whether the stockholders can by appropriate charter or by-law provision deprive themselves of this right.
Plaintiff next argues that the removal of Tomlinson and Meyer as directors would violate the right of minority shareholders to representation on the board and would be contrary to the policy of the Delaware law regarding cumulative voting. Plaintiff contends that where there is cumulative voting, as provided by the Loew's certificate, a director cannot be removed by the stockholders even for cause.
It is true that the Chancellor noted in the Bruch case that the provision for cumulative voting in the Delaware law was one reason why directors should not be considered to have the power to remove a fellow director even for cause. And it is certainly evident that if not carefully supervised the existence of a power in the stockholders to remove a director even for cause could be abused and used to defeat cumulative voting. See 66 Harvard L.R. 531.
Does this mean that there can be no removal of a director by the stockholders for cause in any case where cumulative voting exists? The conflicting considerations involved make the answer to this question far from easy. Some states have passed statutes dealing with this problem but Delaware has not. The possibility of stockholder removal action designed to circumvent the effect of cumulative voting is evident. This is particularly true where the removal vote is, as here, by mere majority vote. On the other hand, if we assume a case where a director's presence or action is clearly damaging the corporation and its stockholders in a substantial way, it is difficult to see why that director should be free to continue such damage merely because he was elected under a cumulative voting provision.
On balance, I conclude that the stockholders have the power to remove a director for cause even where there is a provision for cumulative voting. I think adequate protection is afforded not only by the legal safeguards announced in this opinion but by the existence of a remedy to test the validity of any such action, if taken.
The foregoing points constitute all of the arguments advanced by plaintiff which *859 go to the validity of the call of the meeting for the purposes stated. It follows from my various conclusions that the meeting was validly called by the president to consider the matters noticed.
I turn next to plaintiff's charges relating to procedural defects and to irregularities in proxy solicitation by the Vogel group.
Plaintiff's first point is that the stockholders can vote to remove a director for cause only after such director has been given adequate notice of charges of grave impropriety and afforded an opportunity to be heard.
Defendant raises a preliminary point that plaintiff, being only a stockholder, has no standing to make the contention that the foregoing requirements have not been met.[2] It may be noted that the director whose removal was involved in the Bruch case was not a party in that case and yet the Court considered the issue properly raised. The same situation applied in the Auer case in New York. Moreover, on reason, there would seem no basis for telling a stockholder, particularly where cumulative voting is involved, that he has no right to challenge the legal propriety of action proposed to be taken to remove a member of the board of directors. After all, the board is managing the corporation for all the stockholders and while a director may have sufficient standing to attack the action himself, I cannot believe that a stockholder is lacking a sufficient interest to warrant legal recognition.
I am inclined to agree that if the proceedings preliminary to submitting the matter of removal for cause to the stockholders appear to be legal and if the charges are legally sufficient on their face, the Court should ordinarily not intervene. The sufficiency of the evidence would be a matter for evaluation in later proceedings. But where the procedure adopted to remove a director for cause is invalid on its face, a stockholder can attack such matters before the meeting. This conclusion is dictated both by the desirability of avoiding unnecessary and expensive action and by the importance of settling internal disputes, where reasonably possible, at the earliest moment. Compare Empire Southern Gas Co. v. Gray, 29 Del.Ch. 95, 46 A.2d 741. Otherwise a director could be removed and his successor could be appointed and participate in important board action before the illegality of the removal was judicially established. This seems undesirable where the illegality is clear on the face of the proceedings.
Defendant contends that the sufficiency of the charges or the evidence in support thereof is not for the Court to consider, citing Griffith v. Sprowl, 45 Ind.App. 504, 91 N.E. 25; New Founded Indus. Missionary Baptist Ass'n v. Anderson, La.App., 49 So.2d 342; State ex rel. Blackwood v. Brast, 98 W.Va. 596, 127 S.E. 507. These cases involved either a pertinent by-law or statute, and none involved the removal of a director. They are not contrary to the rules here announced. I conclude that plaintiff can raise the issue as to the propriety of the removal procedure.
Turning now to plaintiff's contentions, it is certainly true that when the shareholders attempt to remove a director for cause, "* * * there must be the service of specific charges, adequate notice and full opportunity of meeting the accusation * * *". See Auer v. Dressel *860 [306 N.Y. 427, 118 N.E.2d 593], above. While it involved an invalid attempt by directors to remove a fellow director for cause, nevertheless, this same general standard was recognized in Bruch v. National Guarantee Credit Corp. [13 Del.Ch. 180, 116 A. 741], above. The Chancellor said that the power of removal could not "be exercised in an arbitrary manner. The accused director would be entitled to be heard in his own defense".
Plaintiff asserts that no specific charges have been served upon the two directors sought to be ousted; that the notice of the special meeting fails to contain a specific statement of the charges; that the proxy statement which accompanied the notice also failed to notify the stockholders of the specific charges; and that it does not inform the stockholders that the accused must be afforded an opportunity to meet the accusations before a vote is taken.
Matters for stockholder consideration need not be conducted with the same formality as judicial proceedings. The proxy statement specifically recites that the two directors are sought to be removed for the reasons stated in the president's accompanying letter. Both directors involved received copies of the letter. Under the circumstances I think it must be said that the two directors involved were served with notice of the charges against them. It is true, as plaintiff says, that the notice and the proxy statement failed to contain a specific statement of charges. But as indicated, I believe the accompanying letter was sufficient compliance with the notice requirement.
Contrary to plaintiff's contention, I do not believe the material sent out had to advise the stockholders that the accused must be afforded an opportunity to defend the charges before the stockholders voted. Such an opportunity had to be afforded as a matter of law and the failure to so advise them did not affect the necessity for compliance with the law. Thus, no prejudice is shown.
I next consider plaintiff's contention that the charges against the two directors do not constitute "cause" as a matter of law. It would take too much space to narrate in detail the contents of the president's letter. I must therefore give my summary of its charges. First of all, it charges that the two directors (Tomlinson and Meyer) failed to cooperate with Vogel in his announced program for rebuilding the company; that their purpose has been to put themselves in control; that they made baseless accusations against him and other management personnel and attempted to divert him from his normal duties as president by bombarding him with correspondence containing unfounded charges and other similar acts; that they moved into the company's building, accompanied by lawyers and accountants, and immediately proceeded upon a planned scheme of harassment. They called for many records, some going back twenty years, and were rude to the personnel. Tomlinson sent daily letters to the directors making serious charges directly and by means of innuendos and misinterpretations.
Are the foregoing charges, if proved, legally sufficient to justify the ouster of the two directors by the stockholders? I am satisfied that a charge that the directors desired to take over control of the corporation is not a reason for their ouster. Standing alone, it is a perfectly legitimate objective which is a part of the very fabric of corporate existence. Nor is a charge of lack of cooperation a legally sufficient basis for removal for cause.
The next charge is that these directors, in effect, engaged in a calculated plan of harassment to the detriment of the corporation. Certainly a director may examine books, ask questions, etc., in the discharge of his duty, but a point can be reached when his actions exceed the call of duty and become deliberately obstructive. In such a situation, if his actions constitute a real burden on the corporation then the stockholders are entitled to relief. The *861 charges in this area made by the Vogel letter are legally sufficient to justify the stockholders in voting to remove such directors. Compare Markovitz v. Markovitz, 336 Pa. 145, 8 A.2d 46, 124 A.L.R. 359, and see 19 C.J.S. Corporations § 738(4). In so concluding I of course express no opinion as to the truth of the charges.
I therefore conclude that the charge of "a planned scheme of harassment" as detailed in the letter constitutes a justifiable legal basis for removing a director.
I next consider whether the directors sought to be removed have been given a reasonable opportunity to be heard by the stockholders on the charges made.
The corporate defendant freely admits that it has flatly refused to give the five Tomlinson directors or the plaintiff a stockholders' list. Any doubt about the matter was removed by the statement of defendant's counsel in open court at the argument that no such list would be supplied. The Vogel faction has physical control of the corporate offices and facilities. By this action the corporation through the Vogel group has deliberately refused to afford the directors in question an adequate opportunity to be heard by the stockholders on the charges made. This is contrary to the legal requirements which must be met before a director can be removed for cause.
At the oral argument the defendant's attorney offered to mail any material which might be presented by the Tomlinson faction. This falls far short of meeting the requirements of the law when directors are sought to be ousted for cause. Nor does the granting of the statutory right to inspect and copy some 26,000 names fulfill the requirement that a director sought to be removed for cause must be afforded an opportunity to present his case to the stockholders before they vote.
When Vogel as president caused the notice of meeting to be sent, he accompanied it with a letter requesting proxies granting authority to vote for the removal of the two named directors. It is true that the proxy form also provided a space for the stockholder to vote against such removal. However, only the Vogel accusations accompanied the request for a proxy. Thus, while the stockholder could vote for or against removal, he would be voting with only one view-point presented. This violates every sense of equity and fair play in a removal for cause situation.
While the directors involved or some other group could mail a letter to the stockholders and ask for a proxy which would revoke the earlier proxy, this procedure does not comport with the legal requirement that the directors in question must be afforded an opportunity to be heard before the shareholders vote. This is not an ordinary proxy contest case and a much more stringent standard must be invoked, at least at the initial stage, where it is sought to remove a director for cause. This is so for several reasons. Under our statute the directors manage the corporation and each has a somewhat independent status during his term of office. This right could be greatly impaired if substantial safeguards were not afforded a director whose removal for cause is sought. The possibility of abuse is evident. Also, as the Chancellor pointed out in the Bruch case, the power of removal can be a threat to cumulative voting rights. This is particularly true where, as here, the removal is by mere majority vote.
There seems to be an absence of cases detailing the appropriate procedure for submitting a question of director removal for cause for stockholder consideration. I am satisfied, however, that to the extent the matter is to be voted upon by the use of proxies, such proxies may be solicited only after the accused directors are afforded an opportunity to present their case to the stockholders. This means, in my opinion, that an opportunity must be provided such directors to present their defense to the stockholders by a statement which must accompany or precede the initial solicitation of proxies seeking authority to vote *862 for the removal of such director for cause. If not provided then such proxies may not be voted for removal. And the corporation has a duty to see that this opportunity is given the directors at its expense. Admittedly, no such opportunity was given the two directors involved. Indeed, the corporation admittedly refused to supply them with a stockholders' list.
To require anything less than the foregoing is to deprive the stockholders of the opportunity to consider the case made by both sides before voting and would make a mockery of the requirement that a director sought to be removed for cause is entitled to an opportunity to be heard before the stockholders vote. See the persuasive language of the dissent in Auer v. Dressel, above. But in referring to the language of the dissent I do not thereby suggest that my conclusion here is necessarily contrary to the majority decision on this point.
I therefore conclude that the procedural sequence here adopted for soliciting proxies seeking authority to vote on the removal of the two directors is contrary to law. The result is that the proxy solicited by the Vogel group, which is based upon unilateral presentation of the facts by those in control of the corporate facilities, must be declared invalid insofar as they purport to give authority to vote for the removal of the directors for cause.
A preliminary injunction will issue restraining the corporation from recognizing or counting any proxies held by the Vogel group and others insofar as such proxies purport to grant authority to vote for the removal of Tomlinson and Meyer as directors of the corporation.
The Court emphasizes that it is considering only the proxy solicitation and use aspect of this problem and is considering those only where advance authority is given to vote in a particular way. I am not called upon to consider what procedural and substantive requirements must be met if the matter is raised for consideration by stockholders present in person at the meeting.
Plaintiff seeks a preliminary injunction restraining the defendant from using the corporate funds, employees and facilities for the solicitation of proxies for the Vogel group and from voting proxies so solicited. Plaintiff bases this request upon the contention that Vogel and his group, by calling the meeting and by using corporate funds and facilities, are usurping the authority of the board of directors. Plaintiff says that the president in effect is using his corporate authority and the corporate resources to deny the will of the board of directors and to maintain himself in office.
This brings the Court to an analysis of this most unusual aspect of this most unusual case. The by-laws provide for thirteen directors. Seven is a quorum. Due to four resignations there are now nine directors in office. Five of the nine are of the Tomlinson faction while the remaining four are of the Vogel faction. Since the Vogel faction will not attend directors' meetings, or at least will not attend directors meetings at which matters may possibly be considered which they do not desire to have considered, it follows that the Tomlinson faction is unable to muster a quorum of the board and thus is unable to take action on behalf of the board. See Tomlinson v. Loew's, Inc., Del.Ch., 134 A.2d 518. In this setting, where a special stockholders' meeting for the election of directors is pending, it becomes necessary to determine the status of each faction in order to resolve the issues posed. And it must be kept in mind that this election can determine which faction will control the corporation.
We start with the basic proposition that the board of directors acting as a board must be recognized as the only group authorized to speak for "management" in the sense that under the statute they are responsible for the management of the corporation. 8 Del.C. § 141(a). In substance that was the holding of the Court *863 in Empire Southern Gas Co. v. Gray, 29 Del.Ch. 95, 46 A.2d 741. However, we are not here confronted with the situation in the Gray case because Loew's board as such cannot act for want of a quorum. Thus, there is no board policy as such with respect to the matters noticed for stockholder consideration. I am nevertheless persuaded that at least where a quorum of directors is in office the majority thereof are not "outsiders" merely because they cannot procure the attendance of a quorum at a meeting. By this I mean that they are not like the customary opposition which is seeking to take control of corporate management. To hold otherwise would be to set a most undesirable legal precedent in connection with the allocation of corporate powers.
Since the Vogel group, being in physical possession of the records and facilities of the corporation, treated the request of the directors for a stockholders' list as though it were to be judged by standards applicable to a mere stockholder's request, I think they violated the duty owed such directors as directors. I need not decide how far the rights of such directors go but I am satisfied that they are not less than the rights of the four "in" directors insofar as the right to have a stockholders' list is concerned. The fact that Vogel, as president, had the power to call a stockholders' meeting to elect directors, and is, so to speak, in physical control of the corporation, cannot obscure the fact that the possible proxy fight is between two sets of directors. Vogel, as president, has no legal standing to make "his" faction the exclusive voice of Loew's in the forthcoming election.
On balance, I believe the conclusion on this point should not result in the absolute nullification of all proxies submitted by the Vogel group. However, I believe it does require that their use be made subject to terms. I say this because they should not be permitted to benefit merely because they have physical control of the corporate facilities when they represent less than a majority of the directors in office.
I conclude that the Vogel group should be enjoined from voting any proxies unless and until the Tomlinson board members are given a reasonable period to solicit proxies after a stockholders' list is made available to them without expense by the corporation.
If the list is submitted on or before September 24, 1957, the Court will not interfere with the holding of the meeting set for October 15, 1957. If the corporation decides to accept this condition the following constitutes the mechanics for compliance. Plaintiff's Delaware counsel, who is also counsel for the Tomlinson faction, should be delivered the stockholders' list in his office unless the parties agree in writing to a different method. If there is delivery the defendant should serve and file an affidavit in the Court immediately showing such delivery. Unless plaintiff attacks the sufficiency of defendant's compliance by motion within one day thereafter it will be assumed that the condition imposed has been fully met. In such event the preliminary injunction will be considered as vacated to the extent it enjoins all recognition of proxies held by the Vogel group.
I next consider how these two groups should be classified for purposes of determining the rights of the Vogel group in connection with the use of corporate money and facilities for proxy solicitation at a stockholders' meeting duly called by the president. Basically, the stockholders are being asked whether they approve of a record made by one group and perhaps opposed by another. While the Tomlinson faction has five of the nine directors, it would be most misleading to have them represent to the stockholders that they are "management" in the sense that they have been responsible for the corporate policy and administration up to this stage. Resignations of directors have created the unusual situation now presented.
Viewing the situation in the light of what has just been said, it is apparent that the Vogel group is entitled to solicit proxies, *864 not as representing a majority of the board, but as representing those who have been and are now responsible for corporate policy and administration. Whereas, the Tomlinson group, while not management in the sense that it is able on its own to take effective director action, is representative of the majority of the encumbent directors and is entitled to so represent to the stockholders if it decides to solicit proxies.
Since the stockholders will, in the event of a proxy fight, be asked to determine which group should run the corporation in the future, the Vogel faction, because it symbolizes existing policy, has sufficient status to justify the reasonable use of corporate funds to present its position to the stockholders. I am not called upon to decide whether the Tomlinson board members would also be entitled to have the corporation pay its reasonable charges for proxy solicitation.
Since I have concluded that the Vogel faction is entitled to expend reasonable sums of corporate funds in the solicitation of proxies, it follows that the request for a preliminary injunction against such use will be denied. The restraining order heretofore entered will be vacated to the extent that it prevents such expenditures.
I next consider whether the Vogel faction is entitled to use corporate facilities and employees in connection with its solicitation. Because such action would carry the intra-corporate strife even deeper within the corporation and because there is no practical way, if there is a proxy contest, to assure equal treatment for both factions in this area when only one is in physical control of such facilities and personnel, I conclude that the defendant should be preliminarily enjoined from using corporate facilities and personnel in soliciting proxies. I emphasize that this conclusion is based upon the corporate status of the two factions herein involved.
Plaintiff next claims that the Vogel group should be enjoined from voting any proxies obtained as a result of the material sent out by Vogel. He argues that Vogel's letter to the stockholders, the proxy statement and the form of proxy deceived and misled the stockholders into believing that the matters noticed for consideration by the stockholders were proposed by the company or its management, whereas the Vogel group is not authorized to speak as "management".
I should say preliminarily that I believe the proxy statement would have been more accurately informative had it contained a concise statement showing the factual situation which created the present status of the two groups. The proxy statement did receive S.E.C. clearance. However, that agency labored under a difficult burden since it did not know the legal rights and status of the Vogel group.
I turn now to the various factors which, according to plaintiff, show that the Vogel faction represented, contrary to fact, that it was soliciting proxies as management.
1. The letter of Mr. Vogel to the shareholders is reproduced on the letterhead of Loew's, Incorporated and comes from the "Office of the President".
I have already pointed out that this is not the case of a working majority of the board versus the president. Indeed, in this case Vogel's administration as president symbolizes one choice in the policy dispute. This dispute is evident from a reading of the material in its entirety. I therefore conclude that by sending the letter on Loew's stationery from the office of the president, Vogel, was not misleading the stockholders.
2. The notice of the special meeting is reproduced on the letterhead of Loew's, Incorporated, signed, by order of the president, by Irving H. Greenfield, Secretary.
The fact is that there was no misrepresentation when the notice of the special meeting was reproduced on Loew's letterhead and signed by the order of the president. *865 I say this because the president was authorized as president to call such a meeting.
3. I assume that plaintiff had now abandoned this point which deals with the power to close the transfer books.
4. The proxy statement recites that "it is considered to be in the best interest of Loew's and the stockholders to remove * * * [Mr. Meyer and Mr. Tomlinson] as a director".
This is nothing more than a statement of belief of Vogel and his group. I cannot see how it is misleading.
5. The proxy material states that Loew's will bear all costs in connection with the solicitation of proxies; that Loew's will reimburse the brokerage houses for expenses incident to the solicitation of proxies; that Loew's has entered into contracts with certain firms to solicit proxies and has agreed to pay them a fee for their services, and that the costs to be paid by Loew's for proxy solicitation will be approximately $100,000.
Plaintiff is here saying in effect that Vogel's group was representing to the stockholders that the corporation would pay for the expenses of proxy solicitation for the Vogel group and thus leading the reader to believe that it was a management solicitation. First of all, such was the intention of the Vogel group and thus it did not constitute a misrepresentation as to their intention. But, in any event, I have now held that reasonable expenses of such solicitation are properly chargeable to the corporation and so no factual misrepresentation was involved. In any event, since the Vogel group was synonymous with management in the policy sense, I cannot see how a stockholder would be misled.
6. The proxy material states that the officers and employees of Loew's will solicit and request the return of proxies.
This is not a misrepresentation in the sense that it was contrary to the intention of the Vogel group. The Court has now determined that the officers and employees in such capacity, cannot solicit proxies. This does not mean that the representation is so material that it can be said to influence stockholders to the extent that the proxies should be voided.
7. The proxy statement is signed by Joseph R. Vogel, as president.
There is no merit to this contention. Vogel as president was certainly authorized to sign the statement in view of the fact that he had the authority to call the meeting.
8. The business reply envelope included with the proxy has on it that postage will be paid by the secretary of Loew's Inc., and is addressed to him in his official capacity. The permit on the envelope is Loew's permit.
The foregoing facts are true but I do not believe that they are so misleading as to void the proxies. After all, the Vogel group is soliciting proxies on the basis of its record in administering the corporation.
Plaintiff contends that in any event the cumulative effect of the various statements mentioned is to lead the ordinary reader to believe that the solicitation is by management.
Plaintiff recognizes that the proxy statement and the form of proxy both recite that "this proxy is solicited by the President and George L. Killion [of the Vogel group] who are members of the executive committee of Loew's, Inc., and in view of the circumstances, not by the management". However, he argues that the import of this statement is lost in the overall impact of the material. Since the meeting was validly called by the president, there was nothing misleading in the creation of the impression that the meeting and material were initiated by the company. I think the whole impact of the proxy material conveyed to the average reader the impression that there is a bitter fight between the president and his faction and another faction on the board.
*866 While I have no doubt that it would have been better for the material to have contained a more explicit factual narrative of the status of the board personnel at the time of the proxy solicitation, I cannot believe that the overall result is so misleading as to justify this Court in concluding that the proxies may not be used for any purpose. Compare Schiff v. RKO Pictures Corp., Del.Ch., 104 A.2d 267. This is particularly so in view of the statement made that it was not solicited by management. Indeed, I think the statement, which was apparently required by the S.E.C. may have been somewhat misleading in the sense that it may have suggested to the reader that the Vogel group was not responsible for the corporate policy up to that date. To this extent, it was more prejudicial to the Vogel group than the Tomlinson group, if a stockholder desired to vote for "management" in the policy sense.
Plaintiff's request that the Vogel group be enjoined from voting any proxies solicited under the material sent out by Vogel will be denied. This disposes of the issues raised in connection with the stockholders' meeting.
Plaintiff next seeks a mandatory injunction to compel the individual defendants (four Vogel directors) to attend directors' meetings. He argues that Vogel and his associates acted unlawfully in attempting to cause the absence of a quorum at meetings of the board of directors for the purpose of preventing the board from exercising its powers.
While a concerted plan to abstain from attending directors' meetings may be improper under some circumstances, I cannot find that the fact that the so-called Vogel directors did not attend directors' meetings called to take action which would give an opposing faction an absolute majority of the board  solely because of director resignations  is such a breach of their fiduciary duty that they should be judicially compelled to attend board meetings. This is particularly so where stockholder action is in the offing to fill the board.
Other considerations aside, no mandatory injunction will issue to compel the individual defendants (Vogel directors) to attend directors' meetings. I have considered this issue on its merits because no point was made of the fact that the individual defendants have not appeared and because of my conclusion that plaintiff's contention lacks merit.
Plaintiff also argues that Vogel violated his fiduciary duty to the board of directors by issuing statements impugning the propriety and necessity of a meeting of the board and attacking the legality of the action taken at the July 30 directors' meeting. Plaintiff does not indicate what relief is requested under this head of his argument and so I see no profit in discussing the matter.
I should add that the prolix factual presentation was put before the Court in such a fashion that it has been at times difficult for the Court to determine whether or not the facts relied upon here are all of record. If I have taken liberties with the record I will expect counsel to promptly so inform me in detail.
I now summarize my conclusions with respect to the relief requested:
1. No preliminary injunction will issue to enjoin the holding of the meeting, now fixed for October 15, 1957.
2. The corporation will be preliminarily enjoined from recognizing and counting any proxies held by the individual defendants unless the corporation supplies the Tomlinson board members the stockholders' list as herein provided.
3. Without regard to the action taken by the defendant under Point 2, the corporation will be preliminarily enjoined from recognizing or counting any proxies held by the Vogel group or others to the extent that such proxies purport to grant authority to vote for the removal of Tomlinson and Meyer as directors.
*867 4. No preliminary injunction will issue to restrain the corporation from paying reasonable sums incurred by the Vogel group in soliciting proxies.
5. A preliminary injunction will issue restraining the corporation from permitting the use of its personnel and facilities for the solicitation of proxies by the Vogel group.
6. No mandatory preliminary injunction will issue to compel the individual defendants to attend directors' meetings.
Present order on notice.
NOTES
[1] Since the point is not raised, I need not consider whether those speaking for the corporation are authorized to do so. Compare Bruch v. National Guarantee Credit Corporation, 13 Del.Ch. 180, 116 A. 738.
[2] This defense comes with somewhat poor grace from the corporation when we consider that the corporation, as represented by this same faction, consented to the entry of an injunction in New York restraining the Tomlinson faction (which involves the two directors sought to be removed) from interfering with the stockholders' meeting called for September 12, 1957. While later modified, at the time this action was filed the directors who are sought to be removed for cause appear to have been under an injunction (whether effective, I need not decide) preventing them from attacking the proposed action even in Court.