HAJOCA CORPORATION *v*. SECURITY TRUST COMPANY.

(*March* 3, 1942.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*Marvel and Morford* for plaintiff.

*Harold B. Howard* and *Hering, Morris, James and Hitchens* for defendant.

Superior Court for New Castle County, November Term, 1941.

520

RODNEY, J., delivering the opinion of the Court:

The relation of depositor and banker arises only out of contract, express or implied. A depositor may stipulate as to the manner in which or by whom the money in an account may be drawn out, or what funds may be deposited therein. In general, so long as no statute or

other rule of law is violated, or the rights of third persons injuriously affected, the parties may contract as they see fit as to the terms and conditions by which the bank shall be bound.

In the instant case the terms of the contract of deposit are precise and certain. Expressly the defendant was authorized to accept for deposit in the account only currency and checks drawn to the order of "Hajoca Special" by the plaintiff corporation itself. From the allegations of the declaration concerning the deposit of the two checks drawn by Burling and Ryan, admitted by the demurrer, it is clear that the defendant failed to perform its undertaking, and that it clearly committed a legal wrong for which an action lies for at least nominal damages.

It is at this point that a difficulty arises from the nature of the pleadings. The defendant has demurred to the first count, and, in its brief, calls the demurrer a "general" demurrer, and this designation is used in the brief of the plaintiff. In view of our conclusion, the nature of the demurrer has some importance. While matters of form must be objected to exclusively by special demurrer, yet many matters of substance may be reached by either general or special demurrer. A special demurrer need not solely be directed to matter of form, but may be directed to matter of substance where the objectionable part of the preceding pleading is pointed out. As applied to matters of substance, a demurrer is general when no particular cause is alleged, and is special when it seeks to point out the particular imperfection insisted upon as a ground of demurrer.

The case of the plaintiff, as disclosed by the declaration and the contentions of the parties, over and beyond the right to nominal damages, relates to the extent of the

plaintiff's injury, and thus to the question of damages. Claims for damages which are not recoverable under the pleadings are tested in various ways in different jurisdictions. 15 Am. Jur., p. 752. In some, recourse is had to a motion to strike, but in none, so far as we know, can such questions be raised by general demurrer. In Delaware a special demurrer lies to test the insufficiency of facts, as constituting a ground for special damages. *Quaker Metal Co. v. Standard Tank Car Co.*, 2 *W. W. Harr.* (32 *Del.*) 350, 123 *A.* 131. In the present case the cause of demurrer is that "the alleged violation of the duty not to accept checks for deposit is not the proximate cause of the plaintiff's loss."

This we think makes the demurrer special in character directed to the facts purporting to sustain the plaintiff's claim for special damages, and to this right to recover special damages we must address ourselves.

The law does not hold one liable for all injuries that follow a breach of contract, but only for such injuries as are the direct, natural and proximate result of the breach. In *Hadley v. Baxendale*, 9 *Ex.* 341, 156 *Eng. Reprint* 145, 5 *E. R. C.* 502, the rule was laid down that "where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, that is, according to the usual course of things, from such breach of contract itself or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

And the Court proceeded to say: "Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and

thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

Ordinary damage is assumed as a matter of law to be within the contemplation of the parties. Special damages, following less directly from the breach, cannot be recovered unless the plaintiff is able to allege and prove that the particular condition which made the damage a possible and likely consequence of the breach was known to the defendant at the time the contract was made. 1 Street Foundations, Legal Liability, 446.

The plaintiff's right to recover the special damages claimed by it under the first count encounters two insuperable difficulties. First, the count does not allege that the defendant had any knowledge whatever of the duties imposed upon Seaton, nor of the limitations and conditions by which he was governed in the receipt and disposal of cash and checks. Such knowledge must be brought home clearly to the defendant, if it is to be held as having fairly contemplated the special consequences of a breach of its engagement. 15 Am. Jur. 458. To allow the recovery of the special damages sought, in view of the facts and circumstances disclosed by the declaration, would, in effect, be to say that the defendant, without knowledge of particular conditions, assumed the risk of protecting the plaintiff against the dishonesty of its own employees.

■ Again, no matter whether the damages sought to be recovered are ordinary or special, it must appear that they flowed proximately from the breach of contract.

■ The count of the declaration expressly avers that prior to the breach of instructions the defendant's agent, Seaton, had embezzled money of the plaintiff, and that in order to cover up all or a part of the shortages represented by the unlawful abstractions, Seaton violated his instructions and duty, and the defendant, likewise breached its undertaking. All this may be admitted, but both of the checks of the plaintiff's customers, however wrongfully deposited with the defendant, represented a certain and identifiable sum of money. None of this money was lost except in a bookkeeping sense. All of it reached the plaintiff, however irregular the path. What the plaintiff actually lost was the money paid in cash to Seaton, and by him appropriated to his own use, prior to the defendant's wrongful acts. The plaintiff's loss was occasioned by the unfortunate circumstance of its own agent's dishonesty. The defendant's breaches of duty may have delayed discovery of the frauds. Undoubtedly, a confusion in customers' accounts resulted. But, it is only by somewhat specious reasoning that it can be said that the defendant's breaches proximately caused the plaintiff's loss and damage.

■ We think the special damages alleged are not recoverable. A cause of action for nominal or general damages is shown, however, and for this reason the demurrer to the first count must be overruled in so far as it applies to nominal or general damages, and sustained in so far as it applies to special damages.

In the second count, the duty of the defendant is stated in this language: "that it should not cash checks drawn

to the order of the plaintiff and purporting to be endorsed in the name of the plaintiff without specific authority from the plaintiff with respect thereto"; and the count proceeds to allege that the defendant, in violation of its undertakings, cashed certain checks drawn to the plaintiff's order by various customers, which did not have its authorized endorsement. These checks, aggregating the sum of $1,580.09, were twelve in number, bore dates from June 9 to November 8, 1939, and each bore the purported endorsement of the plaintiff by Seaton. After reciting the duties of Seaton with respect to the deposit of receipts by him of cash and checks drawn to the plaintiff's order, and his prior embezzlement of large sums of money respresenting cash payments of accounts made to him by customers, as in the first count, it was alleged that Seaton, in order to cover up his defalcations, caused the twelve checks to be cashed at the defendant's bank, "and used said cash, by means of a redeposit thereof in the plaintiff's account at the defendant's bank, to make good the unlawful abstractions * * * and that the said plaintiff at no time received payment of the accounts represented by said checks, but on the contrary received payment of other accounts theretofore paid in cash and misapplied by the said J. C. Seaton."

The sufficiency of this count is challenged by the following special ground of demurrer, "the written instructions of plaintiff to defendant do not support plaintiff's conclusions that there was a contract not to cash the plaintiff's checks."

This action is brought solely upon the contract formed by the plaintiff's letter of instructions as to the account and the defendant's acceptance of these terms.

The plaintiff in his declaration has alleged a negative duty imposed on the defendant not to cash checks

drawn to its order and purporting to be endorsed in its name by Seaton without specific authority. This averment is the pleader's conclusion, the truth of which is not admitted by the demurrer unless it is supported by the contract. The contract says nothing, whatever, as to the cashing of checks, but solely provides what items should go into the account and how withdrawals therefrom should be made. The letter of instructions was in the plaintiff's own language, and must be construed most strongly against it. *Radio Corporation of America v. Philadelphia Storage Battery Co., Del. Ch.,* 6 *A.* 2d 329.. Agreements between parties are, it is true, to be construed liberally so as to carry out the intention of the parties; but it is the duty of the Court to construe contracts as they are made by the parties themselves, and to give to language that is clear, simple and unambiguous the force and effect which the language clearly demands. The Court cannot assume to make for the parties a better agreement than they themselves have been satisfied to make, either by fastening on one of them a liability which is not within the meaning of the language used, or by affording to the other party a measure of protection which the contract does not cover.

The letter of instructions definitely placed a restriction on deposits to be made in the special account, and it is equally definite as to withdrawals from such account. These two matters were the sole subjects of the contract, and this express contract does not cover or control every business relation or connection that the parties might have.

We do not say that a payee of a check may not have a cause of action against a bank cashing such check upon an unauthorized endorsement. Some such cases are collected in *Merchants' Bank v. National Capital Press,* 53 *App. D. C.* 59, 288 *F.* 265, 31 *A. L. R.* 1066; and 67 *A. L. R.* 1535. In some, the form of action was in trover and in others,

after the money had been collected by the bank, in assumpsit as for money had and received for the use of the owner of the check.

 We do say that the contract set out in the declaration and here relied upon does not cover such a case. The demurrer to the second count must be sustained.