IRA G. STÉINBERG ET UX. *v.* MARSHALL J. ARNOLD
AND ALBERT ZEVIN, INDIVIDUALLY,
AND t/a A & Z MANAGEMENT CO.

[No. 871, September Term, 1978.]

*Decided July 6, 1979.*

The cause was argued before MORTON, MOYLAN and MOORE, JJ.

*Edward H. Kerman* for appellants.

*Kelley Litteral* for appellees.

MOYLAN, J., delivered the opinion of the Court.

This case, involving at the surface level the construction of a contract, involves at a deeper level a question of judicial function that transcends mere contract law. When a judge sits as a fact finder, he wears two hats. He is first and foremost the judge — the legal referee — responsible for making rulings of law, including such questions as the admissibility of evidence and whether the evidence is legally sufficient to go to the fact finder. Then, as fact finder, he has the usual jury prerogatives of whether to believe or disbelieve witnesses, how much weight to give testimony and ultimately whether to be persuaded or not to be persuaded. The immediate question before us is whether the judge can cure an error of law by making a speculative or academic finding of fact so as to render the legal error harmless. The trial judge refused to admit certain evidence relating to the construction of the contract. He construed the contract in favor of the defendant-appellees. He then attempted to negate any error in his evidentiary ruling and in his interpretation of the contract by stating that even if he had ruled for the plaintiff-appellants and the issue of damages were before him, he would have found no damages. To reduce it to a nutshell, may a judge rule evidence inadmissible but then reinforce his ruling by adding, "Even if the ruling be erroneous, the error is harmless because, as fact finder, I would not have believed your other evidence as to damages in any event"? We hereby hold that he may not.

The appellants, Mr. and Mrs. Ira Steinberg, entered into a lease agreement with the appellees, Marshall J. Arnold and Albert Zevin of the A & Z Management Company on

November 26, 1975, in order to obtain office space for a real estate brokerage business. The term was originally to begin on January 1, 1976. The lease, however, was subsequently modified by the parties. At issue specifically in this case is that modifying provision:

> "Landlord agrees to give possession to tenant within 7 days after current tenant moves out for fixturing purposes for no additional rent, but in no case will said date of possession be later than 12/24/75."

On January 24, 1976, the appellants were advised by the appellees that possession would not be forthcoming. Thereafter, the appellants filed suit in the Circuit Court for Montgomery County for breach of contract with respect to the appellees' (landlords') failure to deliver possession of the leased premises. The trial court held that a tenant of non-residential premises cannot maintain an action against a lessor for any damages he has incurred by being denied possession. Of this ruling and of the evidence that was and was not admitted bearing upon it, we will have more to say in a moment. The court went further, however, and ruled that even if it was in error on the basic question of liability, the court would find no damages. This alternative reasoning hinged not upon the predicate that evidence of damages was insufficient, as a matter of law, but rather upon anticipatory and speculative fact-finding to the effect that the court, as the fact finder, was simply not persuaded:

> "I would be obliged, therefore, to hold if you reached this point that the Plaintiffs have failed to prove by a fair preponderance of the evidence that there was any difference and if so what that difference was between the rental value and the agreed rent."

The primary impediment to the appellants' possession of the premises was a holdover tenant, whom the appellees were in the process of evicting for failure to pay rent. As an apparent result of the appellees' difficulty in obtaining possession of the premises from the former tenant, the first

draft of the lease agreement between the appellants and the appellees contained a disclaimer of liability in the event that the appellees should fail to obtain possession of the premises.

This express disclaimer of liability was, to be sure, legally redundant. In the absence of express language, liability on the part of the landlord would not be assumed. *Sigmund v. Howard Bank,* 29 Md. 324 (1863). The disclaimer, however, takes on significance in terms of throwing light upon the intention of the contracting parties when we see what they did with that disclaimer.

The appellant-lessees rejected the disclaimer of liability as one of the provisions of the lease, and both parties entered into further negotiations in an attempt to reach an agreement with regard to possession. Subsequently, the parties agreed to strike the provision disclaiming liability for failure to deliver possession to appellants and, in its place, inserted the provision now in question.

The lease as originally prepared contained the following provision disclaiming liability for failure to deliver possession, which provision was crossed out:

> "The Tenant covenants and agrees that he is aware that said property is presently under lease to others; that he has been informed by the Landlord that the present Tenant is in violation of the covenants of his lease with the Landlord; that the Landlord has commenced proceedings to evict said Tenant; that the Landlord will need a period of at least thirty (30) days within which to repair and restore the premises prior to possession by the Tenant; that for these reasons the parties covenant and agree with each other that this Lease Agreement is contingent upon the Landlord being able to properly place the Tenant in possession by the beginning date of this lease; and, should Landlord be unable to do so, the Tenant shall have an option to extend the time for taking of possession for not more than thirty (30) days and thereafter, should the Landlord still be unable to put the Tenant

in possession, this agreement shall terminate and become null and void with no further force and effect. In the event the thirty (30) days option period for taking of possession is used, all dates mentioned hereinabove relating to beginning and ending of the term or any renewal thereof shall be extended for said thirty (30) day period, and provide further, that the Landlord shall have no liability whatsoever for damages that may accrue as a result of the Landlord's inability to place the Tenant in possession as hereinabove provided."

In place of this excised provision (previously quoted), the following provision was handwritten in:

"Landlord agrees to give possession to tenant within 7 days after current tenant moves out for fixturing purposes for no additional rent, but in no case will said date of possession be later than 12/24/75."

As the circumstances unfolded, December 24 came and went with the appellees' attempts to regain possession from the holdover tenant unsuccessful. Upon being notified that a delay of some months was expected, the appellants obtained other office space. The appellants contend that the appellees breached an express covenant to grant possession of the premises under the lease agreement and thus should be liable to the appellees for compensatory damages.

The trial court relied on *Sigmund v. Howard Bank, supra,* for the proposition that, "[t]he defendant has not covenanted against the wrongful acts of another, and he cannot be held responsible for them unless he has fully and expressly so contracted." *Id.* at 328. In *Sigmund,* the court was confronted with a fact pattern somewhat similar to the present case. The defendant in *Sigmund* had leased certain premises to the first tenant. Pending this tenancy, the defendant leased the same premises to the plaintiff whose tenancy was to begin upon the expiration of the first tenant's lease. Because the first tenant held over, plaintiff was unable to obtain possession of the premises. The *Sigmund* court held that the plaintiff has his right of action against the holdover tenant and is not entitled

to maintain an action against the defendant lessor. The court reasoned:

> "While the law implies an undertaking on the part of the lessor that the lessee shall have the undisturbed possession of the premises during the term for which they are demised, and the lessor is as fully bound as if there were an express covenant to that effect, such undertaking only imports that the lessor has such a title as enables him to make a valid and unencumbered lease, and that the possession and enjoyment of the premises will not be interrupted or interfered with by the lessor or by anyone rightfully claiming under him; — it is not a warranty against strangers or wrongdoers." *Id.* at 327.

The other case relied on by the trial court, *Rice v. Biltmore Apartments Co.,* 141 Md. 507, 119 A. 364 (1922), is similar to *Sigmund* in that the lessee was prevented from obtaining possession by reason of a wrongful holding over by a former tenant. The court held that a lessor who does not covenant to guarantee possession is not responsible to the tenant for a third party's wrongful acts.

What both *Sigmund* and *Rice* have in common is the fact that they were solely concerned with implied covenant; a situation where *no* provision regarding possession could be found in the lease. In *Rice,* the court pointed out that "it does not appear that he covenanted to put Baer in possession." Similarly, in *Sigmund,* the court observed that, "[t]he defendant had not covenanted against the wrongful acts of another, and he cannot be held responsible for them, unless he has fully and expressly so contracted."

What is at issue in this case, however, is not the arguable breach of an implied covenant but rather the arguable breach of an express covenant to guarantee possession. More precisely, the issue is not whether there was a breach but whether there was an express covenant guaranteeing possession. That there was an express covenant concerning possession is clear. The question is whether that covenant guaranteed possession. In this regard, it is to be noted from

looking at the lease as a whole that an earlier and unambiguous portion of the lease spells out the time of the lease, "for the term of five (5) years commencing on the 1st day of January, 1976, and ending on the 31st day of December, 1980." This earlier spelling out of the time of the lease adds some weight to the argument that the later provision whereby the "[l]andlord agrees to give possession to Tenant" and whereby "in no case will said date of possession be later than 12/24/75" connotes something more than the mere beginning date of the term of the lease.

It is well settled that the cardinal rule for construing ambiguities in contracts is to ascertain and give effect to the intention of the parties. *Garfinkle v. Schwartzman,* 253 Md. 710, 254 A. 2d 667 (1969); *Mascaro v. Snelling & Snelling,* 250 Md. 215, 243 A. 2d 1 (1968); *DWS Holdings, Inc. v. Hyde Park Associates, Inc.,* 33 Md. App. 667, 365 A. 2d 554 (1976). This rule is applicable whenever a contract contains an ambiguity, which is an expression capable of more than one meaning or of doubtful meaning. *Allen v. Steinberg,* 244 Md. 119, 127, 223 A. 2d 240 (1966).

Not only do we feel that the provision now in question was sufficiently ambiguous to permit the interpretation that it was a covenant guaranteeing possession or to permit a contrary interpretation, but the trial judge must have entertained doubts in this regard himself. Whatever his words may have been about the meaning of the provision, it is clear that he permitted the introduction of parol evidence, particularly from one of the appellees, Marshall J. Arnold, as to the circumstances surrounding and explaining the addition of this provision. We look, therefore, to the law involving the resolving of ambiguous terms. We note initially that principle of law that an ambiguous provision in a lease should be construed against the draftsman. *Burroughs Corporation v. Chesapeake Petroleum & Supply Co., Inc.,* 282 Md. 406, 411, 384 A. 2d 734 (1978); *Schuman v. Gordon Investment Corp.,* 247 Md. 265, 271, 232 A. 2d 256 (1967). In this case, the lease was prepared by the appellees.

Another rule long recognized by the courts in Maryland is to admit extrinsic evidence of the negotiations leading up to

the formulation of a contract, of the circumstances of the parties at the time of entering into the contract and of the parties' own construction of the contract in order to discern their intention. *Canaras v. Lift Truck Services,* 272 Md. 337, 352, 322 A. 2d 866 (1974); *Mascaro v. Snelling & Snelling, supra; DWS Holdings, Inc. v. Hyatt Park Associates, Inc., supra.*.

The appellants repeatedly urged upon the trial court the consideration of the provision that had been excised from the contract disclaiming liability for the inability to deliver possession. They urged that the fact that the disclaimer of liability was removed at their insistence is strong evidence of the fact that the substitute provision was intended by the parties to provide just such liability. They urged that the excision would have been meaningless unless this was the intent of the parties. The trial judge nonetheless declined to consider the drafting history in this regard as throwing any light on the meaning of the final draft of the lease. He ruled that evidence as to provisions which had been excised from the lease was irrelevant on the question of the intent of the parties. We hold that he committed error in refusing to receive and to consider such evidence.

We think the better approach was that taken by *DWS Holdings v. Hyde Park Associates, supra,* which held that, "in case of doubt as to the meaning of the written contract, preliminary negotiations and agreements ought to be considered in construing the written contract." Decisions of other jurisdictions have been even more specific with respect to the consideration of deletions made by parties to a contract. In *Houston Pipe Line Co. v. Dwyer,* 374 S.W.2d 662 (Tex. Supp. 1964), the court held that "The deletions made by the parties ... may be considered by this court in order to arrive at the true meaning and intention of the parties." The New Jersey Appellate Court in *Vandenberg v. John Hancock Mutual Life Ins. Co.,* 48 N.J.Super. 1, 136 A. 2d 661 (1957), ruled that "where the language of a contract is ambiguous and the excision of specific verbiage therefrom before execution is a logical aid towards ascertainment of intent, that fact may be given such weight in its construction as it

rationally deserves." See also *Stockham v. Stockham*, 32 Md. 196 (1870).

It is clear that the court felt doubt concerning the provision for it chose to admit parol evidence as to what the parties intended. Accordingly, the court should have looked beyond the parol evidence offered, to the evidence inherent in the deleted disclaimer provision which states that, "the landlord shall have no liability whatever for damages that may accrue as a result of the landlord's inability to place the tenant in possession as hereinabove provided." With the benefit of all the relevant evidence before it, the court might well have concluded that the appellants were unwilling to allow the appellees to escape all liability for whatever damages might accrue as a result of the appellants being denied possession of the leased premises. The court might well have been able to read this intent into the fact that in place of the deleted disclaimer provision, the appellants had inserted an expressed covenant providing that the appellees put the appellants in possession by a specific date.

The erroneous exclusion of highly relevant evidence on the key point in controversy will cause a reversal of the judgment in this case, notwithstanding the trial court's gratuitous and somewhat speculative findings as to damages under circumstances where the question of damages was not actually before the court. Were the appellants to prevail only on the issue of liability, they would in any event be entitled to costs. We think it more proper, moreover, for a trial court which decides against a plaintiff on the question of liability to forebear speculating as to what its findings as to damages might have been if the issue of liability had been decided in the other direction. This is a different situation than when there is no *prima facie* evidence as to damages as a matter of law. Merely academic fact-finding is subject to too many subconscious pressures to buttress the resolution made on the liability question.

*Judgment reversed; case remanded for a new trial; costs to be paid by appellees.*