Robert E. HIBBERT, et al., Plaintiffs Below, Appellants/Cross-Appellees,

v.

HOLLYWOOD PARK, INC., Defendant Below, Appellee/Cross-Appellant.

Supreme Court of Delaware.

Submitted: Oct. 13, 1982.

Decided: Feb. 15, 1983.

Stephen E. Herrmann (argued) and Thomas A. Beck, Richards, Layton & Finger, Wilmington, for appellants/cross-appellees.

Richard L. Sutton (argued) and Thomas J. Allingham, II, Morris, Nichols, Arsht & Tunnell, Wilmington, for appellee/cross-appellant.

Before McNEILLY, QUILLEN and MOORE, JJ.

MOORE, Justice:

This action was filed in the Superior Court by certain former directors of the defendant corporation, Hollywood Park, Inc., (Hollywood), seeking reimbursement of their proxy contest expenses and indemnification for legal fees and related costs incurred with respect to suits filed by them in their unsuccessful bid for re-election to the Hollywood board. The trial judge ruled that the plaintiffs, as the management slate, were entitled to recover their proxy expenses, but they could not be indemnified under Hollywood's bylaws for funds spent prosecuting lawsuits related to the proxy fight.

The plaintiffs have appealed the ruling denying their claim for indemnification, and the defendant, Hollywood, has cross-appealed the award to plaintiffs of their proxy contest expenses. In our opinion the Superior Court correctly determined that the election dispute was one over corporate policy and it properly ordered Hollywood to pay plaintiffs' proxy expenses. We therefore affirm that portion of the decision. However, we conclude that the Superior Court's interpretation of the bylaws and the director indemnity statute, 8 *Del.C.* § 145, was too narrow. Accordingly, we reverse and remand that aspect of the matter.

I.

Hollywood is a Delaware corporation whose wholly-owned subsidiary, Hollywood Turf Club, is a California corporation operating Hollywood Park Racetrack. Prior to 1974, Hollywood Turf Club was publicly held. In 1974, a holding company structure was created, forming Hollywood as the publicly held parent of the Hollywood Turf Club. The same people sit as directors of the parent and the subsidiary. During the period relevant to this case, there were twelve directors plus one vacant position. Each director was a member of either the Audit Committee or the Executive Committee.

In late 1976 and early 1977, serious divisions developed among the directors, and two factions emerged. One was led by Marjorie Everett, vice-president of the board, and Vernon O. Underwood, chairman of the board; the other was headed by three of the plaintiff-directors, Robert E. Hibbert, Howard B. Keck, and Charles B. Thornton (hereinafter referred to respectively as the Everett faction and the Keck-Thornton faction). The Keck-Thornton group composed the entire Audit Committee, and the Everett group held five of the seven seats on the Executive Committee. The factions disagreed on numerous aspects of management and policy, including the lack of fulltime management personnel, the activities of Mrs. Everett's personal attorney in corporate affairs, and the role of the Audit Committee.

Notwithstanding their disputes, the two sides informally agreed on June 14, 1977 that the then-existing board would be renominated, at company expense, for election at the annual stockholders meeting. During a board meeting on June 27, the directors unanimously nominated themselves

for re-election as the management slate. The minutes of that meeting do not reveal any express corporate commitment to pay the election expenses of this slate. The directors, however, apparently believed that the corporation would pay such costs, and the proxy materials of the Everett faction so stated.

After this meeting, the directors continued to disagree about the sale of corporate assets, racetrack concessions, and fees paid to Mrs. Everett's personal attorney. At a board meeting held on August 5, Underwood proposed that each faction present, at its own expense, a full slate of directors. Thornton moved to confirm the nomination of all incumbents as the management slate with the proviso that if any director did not intend to vote for the slate, his nomination would be dropped and a substitute nominated by action of a "proxy committee". The Everett faction nonetheless began to solicit proxies for a slate of their own nominees. The proxy committee then replaced the Everett faction on the management slate and started soliciting proxies on behalf of a slate composed of the Keck-Thornton faction and six new candidates.

In the meantime, two board meetings had been called to discuss the sale of assets and preparations for the stockholders' meeting. The Everett faction boycotted both meetings. After these boycotts and in the midst of the proxy contest, the Keck-Thornton directors, on September 19, sued Hollywood and certain directors of the Everett faction in California state court. The plaintiffs there sought to postpone the shareholders'

meeting, protect the work of the Audit Committee from interference by the Everett faction, and compel the defendant directors to attend board meetings. The plaintiffs' motion for a temporary restraining order was denied, and they voluntarily dismissed the case.

Early in October, the same plaintiffs sued the same defendants in federal court in California. The plaintiffs alleged that the proxy materials used by the Everett faction contained false and misleading statements. The complaint also alleged breaches of fiduciary duty arising from the defendants' failure to attend board meetings and their interference with the Audit Committee. The federal court refused to grant preliminary injunctive relief, and the case was soon dismissed by the plaintiffs.

The annual meeting was held as scheduled in mid-October, and the Everett faction gained total control of the board. The victorious directors did not attempt to recoup their election expenses from the corporation, Mrs. Everett having paid most of the costs. The Keck-Thornton directors also paid their own proxy expenses but sought reimbursement from the corporation. That request was rejected by a unanimous vote of the newly elected board.

## II.

Plaintiffs contended at trial that Article II, section 16 of Hollywood's bylaws mandate corporate payment of their expenses incurred in the California litigation.[1] The trial judge rejected that argument, reason-

---

1. That bylaw reads in relevant part:

 *Section 16. Indemnification of Directors, Officers and Employees.*

 Every person who is or was a director, officer or employee of the Corporation, or of any other corporation which he serves as such at the request of the Corporation shall be indemnified by the Corporation against any and all liability and reasonable expense that may be incurred by him in connection with or resulting from any claim, action, suit or proceeding (whether brought by or in the right of the Corporation or such other corporation or otherwise), civil or criminal, or in connection with an appeal relating thereto, in which he may be involved, as a party or otherwise, by reason of his being or having been a director, officer or employee of the Corporation or such other corporation, or by reason of any action taken or not taken in his capacity as such director, officer or employee, whether or not he continues to be such at the time such liability or expense shall have been incurred, provided such person acted, in good faith, in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation or such other corporation, as the case may be, and, in addition in any criminal action or proceeding, had

ing that indemnity is compensatory in nature and arises from the individual's defense of litigation brought against him. Noting that the expenses at issue were incurred without board action and in a suit against other directors, the court held that had the bylaw been intended to "provide for such novel use of the indemnity provision, a more explicit grant of power would be necessary".

On appeal, plaintiffs argue that the bylaw is not limited to situations involving actions brought against a director, officer, or employee. According to them, the statu-

tory provision for indemnification of directors and others, 8 *Del.C.* § 145,[2] does not preclude a corporation from giving greater protection. Defendants assert that the plaintiffs' interpretation of the bylaw would result in extremely wide indemnification, reaching all litigation initiated by anyone working for Hollywood and regardless of board approval. It also contends that the bylaw has been consistently read as only indemnifying someone who is sued because of his role with the corporation.

■■■ Our analysis starts with the principle that the rules which are used to inter-

---

no reasonable cause to believe that his conduct was unlawful. . . .

&ast; &ast; &ast; &ast; &ast; &ast;

The rights of indemnification provided in this Section 16 shall be in addition to any other rights to which any such director, officer or employee may otherwise be entitled by contract or as a matter of law; and in the event of any such person's death, such rights shall extend to his heirs and legal representatives. The provisions of this Section 16 are separable, and if any provision be held invalid, all other provisions are fully in effect and such invalid provision shall only be curtailed to the extent necessary to make such provision enforceable, it being the intent of this Section that the Corporation indemnify each of the directors, officers and employees of the Corporation to the maximum extent permitted by law.

**2.** That statute reads in relevant part:

(a) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation . . . against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or

not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

(b) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation . . . against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the corporation unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

&ast; &ast; &ast; &ast; &ast; &ast;

(f) The indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

pret statutes, contracts, and other written instruments are applicable when construing corporate charters and bylaws. *See Ellingwood v. Wolf's Head Oil Refining Co., Inc.,* Del.Supr., 27 Del.Ch. 356, 38 A.2d 743, 747 (1944); *Lawson v. Household Finance Corp.,* Del.Supr., 17 Del.Ch. 343, 152 A. 723, 726 (1930); *In re Osteopathic Hospital Association,* Del.Ch., 41 Del.Ch. 206, 191 A.2d 333, 335 (1963). Following those rules, if the bylaw is unambiguous in its language, we do not proceed to interpret it or to search for the parties' intent behind the bylaw. *Nepa v. Marta,* Del.Supr., 415 A.2d 470 (1980); *Myers v. Myers,* Del.Supr., 408 A.2d 279 (1979). We only construe the bylaw as it is written, and we give language which is clear, simple, and unambiguous the force and effect required. *See Hajoca Corp. v. Security Trust Co.,* Del.Super., 41 Del. 514, 25 A.2d 378 (1942).

■ The parties argue over whether a director who is a plaintiff in a suit initiated by him because of his position as a director should be indemnified. The bylaw is not made ambiguous merely because the parties disagree on its proper construction. *See, e.g., Downs v. National Casualty Co.,* Conn. Supr.Ct. Errors, 152 A.2d 316, 319 (1959); *Rice v. Rice,* D.C.Ct.App., 415 A.2d 1378, 1380 n. 1 (1980). If the bylaw was reasonably susceptible of different constructions or interpretations, it would be ambiguous. *See 1901 Wyoming Ave. Cooperative Association v. Lee,* D.C.Ct.App., 345 A.2d 456, 461 n. 7 (1975); *Burbridge v. Howard University,* D.C.Ct.App., 305 A.2d 245, 247 (1973); *Steinberg v. Arnold,* Md.Ct.Spec. App., 42 Md.App. 711, 402 A.2d 1302, 1305 (1979).

■ We conclude, however, that there is only one interpretation of the bylaw. The bylaw contains no limitation on the type of action for which an individual, otherwise qualified under the bylaw, must be indemnified. Indemnity is provided for any reasonable expense incurred "in connection with or resulting from any claim, action, suit or proceeding (whether brought by or in the right of the Corporation or such other corporation or otherwise), civil or criminal". The indemnitee's role or position in the litigation is not a prerequisite to indemnification: he must only be involved "as a party or otherwise". Words and phrases used in a bylaw are to be given their commonly accepted meaning unless the context clearly requires a different one or unless legal phrases having a special meaning are used. *Standard Power & Light Corp. v. Investment Associates, Inc.,* Del.Supr., 29 Del.Ch. 593, 51 A.2d 572, 576 (1947). "Party", as used here, refers to either the plaintiff *or* the defendant in a lawsuit,[3] and the entire phrase is broad enough to include an individual who acts as an intervenor or *amicus curiae* in any particular case.[4]

The trial judge concluded that indemnity clauses of the type at issue here "appear to have been adopted in contemplation of defensive applications," thus implying that to indemnify the plaintiffs would be inconsistent with the purpose of indemnification. As one commentator has noted:

> The invariant policy of Delaware legislation on indemnification is to 'promote the

---

3. "Party" is defined as:

 Specifically, the plaintiff or the defendant in a lawsuit . . . ; strictly, one directly disclosed by the record to be so involved in the prosecution or defense of a proceeding as to be bound by the decision or judgment therein; in a more general sense, one indirectly so disclosed as being directly interested in the subject matter of the suit, or as having power to make a defense, control the proceedings, or appeal from the judgment; a litigant.

 Webster's New International Dictionary 1784 (2d ed. unabr. 1951). *Accord* American Heritage Dictionary 957 (1st ed. 1969).

4. Because the bylaw is unambiguous, we need not consider defendants' contention that the bylaw has been consistently interpreted to require indemnification only when an individual was a defendant. *E.g., Trumbull Electric Mfg. Co. v. John Cooke Co.,* Conn.Supr.Ct.Errors, 130 Conn. 12, 31 A.2d 393 (1943); *United States Naval Academy Alumni Ass'n v. American Publishing Co.,* Md.Ct.App., 195 Md. 150, 72 A.2d 735 (1950). *See* 4 S. Williston, Contracts § 623, at 793 (3d ed. 1961).

desirable end that corporate officials will resist what they consider' unjustified suits and claims, 'secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated'. Beyond that, its larger purpose is 'to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve'.

E. Folk, The Delaware General Corporation Law 98 (1972) [quoting *Mooney v. Willys-Overland Motors, Inc.,* 204 F.2d 888, 898 (3d Cir.1953) and *Essential Enterprises Corp. v. Automatic Steel Products, Inc.,* Del.Ch., 39 Del.Ch. 371, 164 A.2d 437, 441–42 (1960)]. Plaintiffs, through the California litigation, sought to compel the defendant directors to attend board meetings and to protect the independence of the board's internal auditing procedures. We can not say that such litigation was entirely initiated without regard to any duty the plaintiffs might have had as directors. In short, those lawsuits served, as we see it, to uphold the plaintiffs' "honesty and integrity as directors".

 Furthermore, indemnification here is consistent with current Delaware law. Under 8 *Del.C.* § 145(a) and (b), "a corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed" derivative or third-party action. By this language, indemnity is not limited to only those who stand as a defendant in the main action. Folk, *supra,* at 99. *Compare* 8 *Del.C.* § 122(10), *repealed by* 56 Del. Laws, ch. 50 (corporation has power to indemnify a director or officer for expenses incurred "in connection with the defense of any action, suit or proceeding . . ."). The corporation can also grant indemnification rights beyond those provided by the statute. 8 *Del.C.* § 145(f). *See* Arsht, *Indemnifica-*

*tion Under Section 145 of the Delaware General Corporation Law,* 3 Del.J.Corp.L. 176, 176–77 (1978). It follows that the trial judge adopted an interpretation of the bylaw which is at odds with the plain language of the bylaw, the purpose of indemnification, and Delaware law. We therefore reverse that portion of the Superior Court opinion which denied plaintiffs reimbursement for costs incurred in the California litigation.

### III.

The Superior Court also ordered that the plaintiffs were to be reimbursed for their reasonable expenses incurred in soliciting proxies for the 1977 stockholders meeting. The plaintiffs, constituting the Keck-Thornton faction, were found by the court to be the incumbent directors, seeking to continue existing policies, for purposes of reimbursement. The issues dividing the two factions were ones of policy, not personality clashes. *See Hall v. Trans-Lux Daylight Picture Screen Corp.,* Del.Ch., 20 Del.Ch. 78, 171 A. 226 (1934). In reaching these conclusions, the trial judge found that at the board meeting on June 14, 1977, the then-existing board was designated as the management slate, and the nominations were affirmed at the August 5th meeting.[5] On cross-appeal, the defendant corporation raises four challenges to these conclusions: (1) there was no corporate undertaking to pay the proxy expenses; (2) the motion at the August 5th meeting, formally nominating the board members for re-election, was invalid; (3) the willingness and ability of the plaintiffs to pay their own proxy expenses precludes recovery from the corporation; and (4) the plaintiff's proxy materials were misleading, thus preventing reimbursement by the corporation.

At the outset, we note plaintiffs' suggestion that the issue of their willingness and ability to pay was not fairly presented before the trial judge. From our review of

**5.** On the evidence of record, we are satisfied that the trial judge could factually find that the proxy committee was duly constituted.

the record we are not certain of the accuracy of this contention, but in any event, there is no principle in Delaware law that a management slate's right to reimbursement of its proxy expenses is in any way contingent on a personal inability to meet the same. The findings of fact made by the trial judge on the other issues are not clearly wrong, contrary to defendant's contention, and we accept them. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

■ Having concluded that the Keck-Thornton faction was the management group for the purposes of re-election to the board, the trial judge correctly held that that faction was entitled to use corporate funds to present its position. *Campbell v. Loew's, Inc.,* Del.Ch., 36 Del.Ch. 563, 134 A.2d 852, 864 (1957). The proxy contest, though couched in terms of election to the board, was actually one involving substantive differences about corporation policy. Plaintiffs, therefore, had an equitable and legal right to recover from the corporation their reasonable expenses resulting from the proxy contest. *Empire Southern Gas Co. v. Gray,* Del.Ch. 29 Del.Ch. 95, 46 A.2d 741 (1946); *Hall, supra.*

Citing *Grodetsky v. McCrory Corp.,* N.Y. Supr., 49 Misc.2d 322, 267 N.Y.S.2d 356, *aff'd without opn.,* N.Y.App.Div., 27 A.D.2d 646, 276 N.Y.S.2d 841 (1966), defendant contends that the court could not authorize or compel the corporation to pay plaintiffs' proxy expenses. Their argument, however, is based on a factual assumption, i.e., that the board did not undertake, in June or August 1977, to pay the expenses, that the trial judge rejected. *Grodetsky* involved an attorney working for a non-director shareholder who sought to recover his costs of fighting a successful proxy contest. In contrast to *Grodetsky,* there was a board resolution (that of August 5th) which committed the corporation to pay the proxy expenses of any person running for election on the management slate. The Superior Court could properly compel the corporation to make good on that commitment. It fol-

lows that the award of proxy expenses to plaintiffs was correct.

\* \* \*

AFFIRMED IN PART, REVERSED IN PART, REMANDED FOR FURTHER ACTION CONSISTENT WITH THIS OPINION.