# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CORONADO COAL II,        )
LLC                                 )
                Plaintiff,      )
                                 )
          v.              )  C.A. No. N21C-10-136
                                 )         AML CCLD
BLACKHAWK LAND     )
AND RESOURCES LLC    )
                Defendant.   )

Submitted: February 17, 2022
Decided: May 31, 2022

## MEMORANDUM OPINION

Upon Defendant Blackhawk Land and Resources LLC's Motion to Dismiss, **GRANTED**.

Geoffrey Grivner, Esquire of BUCHANAN INGERSOLL & ROONEY PC, Wilmington, Delaware; Gretchen Jankowski, Esquire, and Jordan Webster, Esquire of BUCHANAN INGERSOLL & ROONEY PC, Pittsburg, Pennsylvania, *Attorneys for Plaintiff Coronado Coal II, LLC*.

John Sensing, Esquire and Carson Bartlett, Esquire, of POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware; M. Shane Harvey, Esquire of JACKSON KELLY PLLC, Charleston, West Virginia, *Attorneys for Defendant Blackhawk Land and Resources LLC*.

**LeGrow, J.**

The parties to this action entered into a lease permitting the plaintiff to mine a certain seam of coal below the defendant's mining operations. The lease incorporated an arbitration clause requiring the parties to arbitrate any question concerning the lessee's performance of certain articles in the lease or any covenant contained in those articles. The plaintiff contends one of those articles gives it the right to mine the greatest possible amount of coal from the leased seam, and that the defendant interfered with that right by refusing to approve the plaintiff's mining plans on the basis they would interfere with the defendant's own mining operations.

The pending motion to dismiss requires this Court to determine whether the parties' agreement to arbitrate questions regarding the lessee's "performance" is limited to the lessee's performance of its obligations or whether that clause also extends to the performance of the lessee's rights. Because the plaintiff's attempt to limit the scope of the arbitration clause is inconsistent with the contract's plain terms and would require the Court to read limitations into an unambiguous contract, the complaint must be dismissed for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the complaint and the documents it incorporates by reference. This dispute arises out of a lease between Plaintiff Coronado Coal II, LLC ("Coronado") and Defendant Blackhawk Land and Resources, LLC ("Blackhawk"). Coronado is a subsidiary of Coronado Global

Resources Inc., a company that produces metallurgical coal.[1] Blackhawk leases numerous tracts of coal in Wyoming and Boone Counties, West Virginia, for the purposes of coal mining.[2] In 2015, Blackhawk subleased one of those tracts of coal to Coronado (the "Sub-Sublease").[3] For years, each party successfully upheld the terms of their agreement. In 2019, however, a conflict arose regarding Blackhawk's rejection of Coronado's retreat mining plans. That conflict forms the basis of this dispute.

### A. The 1937 Lease

The parties' Sub-Sublease is based upon an original lease, signed in 1937, ("1937 Lease"), between the Loup Creek Colliery Company and The Koppers Coal Company. The 1937 Lease gave the Koppers Coal Company the right to mine the Powellton Coal Seam ("Powellton Seam") in West Virginia.[4] That original lease established numerous mining rights and obligations of the parties and contained twenty-three articles.[5] Significant to this action, the 1937 Lease contained an arbitration clause (the "Arbitration Clause") at Article 20, which reads:

> Should any question arise between the parties hereto as to the performance by the Lessee of Article Six, Seven, Eight, Nine, and Ten hereof, or any of them, or of any covenant contained in said Articles, or any of them, every such question shall be determined by arbitration in the manner provided for in this Article and the Lessee hereby covenants

---

[1] Compl. ¶ 16.
[2] Defendant's Motion to Dismiss (hereinafter "Mot. to Dismiss") at 2.
[3] *Id.*
[4] Compl. ¶ 20.
[5] Mot. to Dismiss, Ex. 1.

with the Lessor to comply with and carry out promptly the decision or award of any and every board of arbitration appointed under this or any other article of this lease.[6]

## B. The 2015 Sub-Sublease

On December 21, 2015, Rockwell Mining LLC, a successor lessee of The Koppers Coal Company, sub-leased its right to mine the Powellton Seam to Blackhawk. The same day, Blackhawk signed the Sub-Sublease giving Coronado the right to mine for five years portions of the Powellton Seam "in such a manner as to recover the greatest possible amount of coal therefrom."[7] Coronado also agreed to mine "in such manner that the mining thereof shall not injure or destroy any other vein or seam of coal not mined, or prevent the convenient and proper mining thereof."[8] Both those covenants were contained in Article Six of the 1937 Lease. The Sub-Sublease was made "subject to and in accordance with the terms and conditions of the [1937 Lease]," including Article Six and the Arbitration Clause in Article 20.[9] Coronado concedes it is bound by the Arbitration Clause but contends it does not apply to this case.

The 1937 Lease governs multiple seams of coal, and the Sub-Sublease gave Coronado the right to mine a seam below Blackhawk's own mining operations. For

---

[6] *Id.* at 17.
[7] Compl. ¶ 2; Mot. to Dismiss at 2.
[8] Compl. ¶ 2.
[9] Mot. to Dismiss, Ex. 2 at 5. In consideration for the Sub-Sublease, Coronado has paid Blackhawk $3,000,000 along with monthly royalties. Compl. ¶ 24.

that reason, the Sub-Sublease requires Coronado regularly to submit mining plans to Blackhawk.[10] Blackhawk must approve those plans in writing before Coronado begins mining.[11] Between 2016 and 2020, Coronado submitted mining plans to Blackhawk in accordance with the 2015 Sub-Sublease, which then were approved by Blackhawk before Coronado commenced underground mining operations in the Powellton Seam.[12] Because Coronado had not removed all minable and merchantable coal as of 2020, the Sub-Sublease was extended through 2021.[13]

**C. Blackhawk Rejects Mining Plans in 2020**

During the Sub-Sublease negotiations in 2015, Blackhawk made Coronado aware of Blackhawk's future plans to conduct surface mining activities in the vicinity of Coronado's mining operations; these plans included an intent to begin underground mining operations in August 2019, roughly three-hundred feet above Coronado's mine.[14] In late 2019, Blackhawk asked Coronado to refrain from mining directly below its mining operation, citing concerns regarding Coronado's retreat

---

[10] Compl. ¶ 32.

[11] But the Sub-Sublease also required Blackhawk's approval of Coronado's plans "not be unreasonably withheld" and "[Blackhawk] shall not withhold notice of approval or disapproval for an unreasonable length of time." Compl. ¶¶ 32-33.

[12] *Id.* ¶¶ 36-39.

[13] *Id.* ¶¶ 30-31. The Sub-Sublease allowed the parties to extend the Sub-Sublease beyond the original agreed-upon term if Coronado had not mined or removed "mineable" and "merchantable" coal in the seam. *Id.* ¶ 28.

[14] *Id.* ¶ 45.

4

mining plans.[15] Blackhawk began underground mining operations in January 2020 without officially objecting to Coronado's mining plans.[16]

In December 2020, Blackhawk formally rejected Coronado's retreat mining plans, citing them as "problematic for the continued development and safety of the Blackhawk Coal Branch mine."[17] Blackhawk claims Coronado never responded to a 2020 letter advising Coronado of Blackhawk's rejection of the retreat mining plans.[18]

### D. This Litigation Begins

In response to Blackhawk's rejection of Coronado's mining plans, Coronado filed its Complaint on October 18, 2021, alleging breach of contract (Count I)[19] and promissory estoppel (Count II).[20] Coronado argues Blackhawk's rejection of its mining plans violated the terms of the 1937 Lease and the Sub-Sublease.[21] Coronado contends this rejection constitutes a breach because the plans Blackhawk rejected did not present any unusual risks to the development or safety of Blackhawk's existing or planned mining operations.[22] Coronado additionally seeks damages for

---

[15] *Id.* ¶ 46. Coronado's retreat mining allegedly would cause the mine's roof to collapse, therefore endangering the safety of Blackhawk's own active mines above it. Mot. to Dismiss at 4.
[16] Compl. ¶ 49.
[17] *Id.* ¶ 51.
[18] Mot. to Dismiss at 5.
[19] Compl. ¶ 59-68.
[20] *Id.* ¶ 69-75.
[21] *Id.* ¶¶ 62-65.
[22] *Id.* ¶¶ 9-10.

expenses incurred in its attempt to adjust its mining operations to comply with Blackhawk's rejection of the original mining plans.[23]

On December 13, 2021, Blackhawk moved to dismiss for lack of subject matter jurisdiction, contending the 1937 Lease's Arbitration Clause divests this Court of authority to hear Coronado's claims.[24] In November 2021, Blackhawk initiated arbitration proceedings in West Virginia. That arbitration is stayed pending this Court's decision on Blackhawk's motion.[25]

### E. Parties' Contentions

Coronado argues the Arbitration Clause is narrowly drawn, such that it only mandates arbitration for questions arising out of Coronado's performance under the 1937 Lease and Sub-Sublease.[26] In its Complaint, Coronado contends the Sub-Sublease allowed Blackhawk to continue surface mining in the vicinity of Coronado's retreat mining areas but did *not* allow Blackhawk to mine underground in the vicinity of Coronado's own planned mining areas.[27] Coronado argues the Arbitration Clause governs only those disputes arising out of the *Lessee's conduct*, and Coronado contends this dispute arises out of *Blackhawk's conduct,* such that the Arbitration Clause does not govern Coronado's claims.[28]

---

[23] *Id*. ¶¶ 56-57.
[24] Mot. to Dismiss at 6-8.
[25] *Id*. at 5.
[26] Plaintiff's Answering Brief (hereinafter "Pl.'s Answ. Br.") at 9-11.
[27] Compl. ¶¶ 25-26
[28] Pl.'s Answ. Br. at 2 (emphasis added).

6

Blackhawk responds to this argument by reiterating that although the Arbitration Clause is narrowly drawn as to which of the Articles it governs, it broadly covers all disputes arising under those Articles and plainly applies to Coronado's claims.[29]  Specifically, Blackhawk points to the "any question" and "every such question" language in the Arbitration Clause as confirming the parties' intent to mandate arbitration broadly for all disputes arising from the specified Articles.[30] Blackhawk contends the Arbitration Clause governs *all* disputes arising out of Coronado's conduct, regardless of whether the conduct in question concerns Coronado's failure to perform its obligations (as Blackhawk alleges) or Blackhawk's interference with Coronado's performance of its rights (as Coronado alleges).[31]

In the alternative, Blackhawk contends the complaint should be dismissed on *forum non conveniens* grounds, because litigating this case in Delaware would cause overwhelming hardship and inconvenience to Blackhawk.[32]  Coronado contends Blackhawk fails to articulate any specific reason why West Virginia has a stronger interest in hearing the case or why Blackhawk would face overwhelming hardship were the case to be heard in Delaware.[33]  In response, Blackhawk emphasizes West

---

[29] Defendant's Reply Brief (hereinafter "Def.'s Reply Br.") at 2.
[30] *Id*. at 3.
[31] *Id*.
[32] Mot. to Dismiss at 10.
[33] Pl.'s Answ. Br. at 12-17.

Virginia's strong public policy interest in adjudicating matters that effect mining activities occurring within the state.[34]

The Arbitration Clause controls this dispute. Concluding otherwise would violate basic principles of contract interpretation and create an inconsistency between the 1937 Lease and Sub-Sublease. For the following reasons, Blackhawk's Motion to Dismiss is **GRANTED**.

## ANALYSIS

Under Delaware law, when a party's "dispute is one that, on its face, falls within the arbitration clause of the contract," a motion to dismiss must be granted.[35] Delaware courts lack subject matter jurisdiction to resolve disputes that litigants contractually agreed to arbitrate.[36] A strong presumption exists in Delaware in favor of arbitration "and, accordingly, contractual arbitration clauses are generally interpreted broadly by the courts."[37] If this Court finds Coronado's claims fall within the Arbitration Clause, the Court must dismiss this case. When arbitrability of a claim is disputed, a reviewing court must resolve two questions: (1) whether the arbitration clause is broad or narrow in scope; and (2) whether the claim at issue falls within the scope of the arbitration provision.[38] When an arbitration clause is narrow,

---

[34] Def.'s Reply Br. at 8.
[35] *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007).
[36] *Id*.
[37] *Id.* at 430.
[38] *Parfi Holding AB v. Mirror Image Internet, Inc*. 817 A.2d 149, 155 (Del. 2002).

8

the claim at issue must directly relate to a right in the contract in order to be arbitrable.[39]

## I. The 1937 Lease's plain reading requires the parties to arbitrate this dispute.

An arbitration clause is narrow if it is limited to only specific types of disputes.[40] Even if Article 20 is a narrow clause, as Coronado contends, the Court nevertheless must interpret it according to the language the parties chose at the time of contracting. When a contract is clear and unambiguous, the Court will give effect to the plain meaning of its terms and provisions.[41] If that plain meaning is not immediately ascertainable, "Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."[42] Generally, "a court will prefer an interpretation that harmonizes the provisions in a contract as opposed to one that creates an inconsistency or surplusage."[43]

A contract only is ambiguous when it is susceptible of more than one reasonable interpretation.[44] An unreasonable interpretation of a contract "produces

---

[39] *Id.*

[40] *Milton Inv., LLC v. Lockwood Bros. II, LLC*, 2010 WL 2836404, *6 (Del. Ch. July 20, 2010).

[41] *In Re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 57 (Del. 2019) (quoting *Salmone v. Gorman*, 106 A.3d 354, 374 (Del. 2014)).

[42] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006). Delaware courts have used Merriam-Webster's dictionary to determine the plain meaning of a contract term, *See e.g.*, *Hibbard v. Hollywood Park, Inc.*, 457 A.2d 339 n.3 (Del. 1983); *Cove on Herring Creek Homeowner's Ass'n v. Riggs*, 2005 WL 1252399 n.10 (Del. Ch. 2005).

[43] *GRT Inc. v. Marathon GTF Tech., Ltd.*, 2012 WL 2356489 at *4 (Del. Ch. June 12, 2012) (citing *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012)).

[44] *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 288 (Del. 2001) ("[A] contract is only ambiguous when the provisions in controversy are reasonably or fairly susceptible to different

9

an absurd result or one that no reasonable person would have accepted when entering the contract."[45]  This Court will not find ambiguity in a contract provision if the interpretation a party puts forth is unreasonable. The 1937 Lease, as incorporated into the Sub-Sublease, provides, "[s]hould any question arise between the parties hereto as to the performance by the Lessee of Article Six . . . or of any covenant contained in said Article[], or any of them, every such question shall be determined by arbitration."[46]  Coronado's primary contention focuses on the language, "performance by Lessee" and argues this language only applies to disputes arising out of Coronado's *actual* or *completed* performance under the 1937 Lease and Sub-Sublease, rather than issues arising out of Coronado's *inability* or *failure* to perform its obligations under the leases.  Additionally, Coronado urges the Court to interpret the language "performance by Lessee" to encompass only Coronado's *obligation*, not Coronado's *right*, to perform.

The interpretation Coronado urges this Court to adopt would require the Court to add words and limitations to the Arbitration Clause that are not contained in its text.  By its plain meaning, "performance" encompasses Coronado's performance or inability to perform both its rights and obligations under the 1937 Lease and Sub-

---

interpretations or may have two or more different meanings.") (*citing Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1197 (Del. 1992)).

[45] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) (citations omitted).

[46] Mot. to Dismiss, Ex. 1 at 17.

Sublease.[47]   It would be inconsistent to interpret the word "performance" to encompass only the duty or obligation to perform, while excluding the right to perform, when the plain meaning of "performance" does not narrow its scope in that way.[48]   Delaware courts will not bend contractual language to add limitations that the parties neither intended nor extracted at the bargaining table.[49] Coronado's interpretation contradicts the 1937 Lease's clear and unambiguous terms and is not reasonable.

Coronado's proffered interpretation also is unreasonable because it creates a false distinction that would be impossible to apply in practice.   In its breach of contract claim, Coronado expressly cites its right to mine the greatest possible amount of coal from the leased seam.[50]   This right inextricably is intertwined with Coronado's reciprocal duty, contained in the same sentence of Article Six, not to injure, destroy, or prevent the convenient mining of any other seam.   In the abstract, and in this actual dispute, the "right" Coronado seeks to enforce cannot be severed from its obligation.   Coronado's effort to create this distinction is unworkable;

---

[47] "Performance" is given its usual meaning of "execution of an action." Performance, *Merriam-Webster* (2022) https://www.merriam-webster.com/dictionary/performance (Feb. 22, 2022).

[48]        Performance,        *Merriam-Webster*        (2022)        https://www.merriam-webster.com/dictionary/performance (Feb. 22, 2022).

[49] *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 588 (Del. Ch. 2006); *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1025 (Del. Ch. 2006)

[50] Compl. ¶¶ 60-66.

Coronado cannot litigate Blackhawk's alleged breach of Coronado's rights without also litigating Coronado's obligations under Article Six.

Coronado's promissory estoppel claim similarly is subject to the Arbitration Clause. A promissory estoppel claim requires proof, among other things, that the promisor (here, Blackhawk) made a promise that it reasonably expected would induce action by the promisee (here, Coronado), and that the promisee relied on that promise.[51] In its Complaint, Coronado alleges it paid Blackhawk royalties "with the expectation that it would be permitted to mine the Powellton Seam so as to 'recover the greatest possible amount of coal therefrom and in such a manner that the mining thereof shall not injure or destroy any other vein or seam of coal . . . .'"[52] This promise on which Coronado's estoppel claim is based squarely arises from Coronado's performance of Article Six and the covenants contained in that article.

For the foregoing reasons, even if the Court views Article 20 as a narrow arbitration clause, its unambiguous terms demonstrate an agreement to arbitrate all claims regarding the Lessee's performance under Article Six. The two claims at issue in this case both directly relate to Coronado's performance of rights and obligations contained in that article. Accordingly, Blackhawk's motion to dismiss

---

[51] *See, e.g., Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007).
[52] Compl. ¶ 12.

both counts is granted because the 1937 Lease's Arbitration Clause governs the present dispute and divests this Court of jurisdiction over Coronado's claims.

**II.     Blackhawk's forum *non conveniens* argument is moot.**

Because Coronado's claims are subject to mandatory arbitration, Blackhawk's *forum non conveniens* argument is moot.

## CONCLUSION

For the foregoing reasons, Blackhawk's Motion to Dismiss is **GRANTED.**